```
                          _____

                          No. 96-2110
                          _____
```

United States of America,       *
                                      *
        Plaintiff-Appellee,    *  Appeal from the United States
                                     *  District Court for the
    v.                       *  Southern District of Iowa.
                                     *
Reed Raymond Prior,         *
                                      *
        Defendant-Appellant.   *

```
                          _____

                Submitted:  October 23, 1996

                  Filed: February 27, 1997
                          _____
```

Before FAGG, BOWMAN, and HANSEN, Circuit Judges.
```
                          _____
```

HANSEN, Circuit Judge.

Reed Raymond Prior received a mandatory life sentence following his plea of guilty to one count of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1) (1994). Prior appeals his sentence and the district court's[1] denial of his motion to withdraw his plea. We affirm.

**I.**

Acting upon information that Prior was dealing in narcotics, police made numerous attempts to locate Prior. On May 2, 1995, police located Prior's vehicle at a Motel 6 in Des Moines, Iowa. They observed Prior carrying bags to his car as he prepared to

---

[1]The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa.

leave his room. Police officers followed Prior to a mini storage unit where they saw him transferring items from his vehicle to the storage unit. Police officers then obtained a search warrant for the storage unit and Prior's vehicle. During the search, officers found a large quantity of methamphetamine in a duffle bag on the floor of the storage unit. In all, the police seized 869 grams of methamphetamine from the vehicle and storage unit. The police also seized a scale, other drug paraphernalia, and $17,690 in cash.

Prior was arrested and charged with possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Given the amount of cash and actual methamphetamine found in the search, Prior could have been held responsible for a total of 1,147.6 grams of methamphetamine. The government provided notice that it would request the enhanced mandatory minimum sentence of life imprisonment without the possibility of parole, pursuant to § 841(b)(1)(A)(viii), because Prior's offense involved over 100 grams of methamphetamine and he had three prior felony drug convictions.

Three days after his arrest, Prior signed a written waiver of indictment, a waiver of detention hearing, and a guilty plea agreement in which Prior agreed to fully cooperate with the government and provide complete and truthful information concerning any criminal matters of which he has knowledge. If the government determined Prior had provided substantial assistance in the investigation or prosecution of another person, the government had the sole discretion under the agreement to move for a departure below the mandatory minimum life sentence. Prior's attorney moved quickly with this agreement to preserve Prior's option of providing substantial assistance, which was the only way to avoid the mandatory life sentence. (Plea Tr. at 23.) After a hearing on May 31, 1995, the district court accepted Prior's plea of guilty and ordered the preparation of a presentence investigation report.

On November 30, 1995, before sentencing had taken place, Prior filed a motion to withdraw his guilty plea. During a hearing on the motion, Prior presented testimony that he had been incompetent to enter the plea agreement because he was going through withdrawal from addiction to controlled substances at the time he signed the agreement on May 5, 1995. Following a hearing, the district court filed a written order denying the motion. The court found that even if Prior had been incompetent at the time he signed the agreement, he undoubtedly was competent to make a knowing and voluntary waiver of his rights at the plea hearing when the district court accepted his plea of guilty.

On April 11, 1996, the district court entered judgment on Prior's guilty plea. The government presented certified copies of Prior's previous drug convictions and refused to make a substantial assistance motion, rendering the district court without authority to depart below the statutory minimum life sentence. Accordingly, the district court sentenced Prior to a mandatory life sentence without the possibility of parole. Prior appeals.

## II.

Prior first contends that the district court erred in denying his motion to withdraw his guilty plea. A guilty plea is a solemn act not to be set aside lightly. United States v. Morrison, 967 F.2d 264, 268 (8th Cir. 1992). We review the district court's denial of a motion to withdraw a plea for an abuse of discretion. United States v. Newson, 46 F.3d 730, 732 (8th Cir. 1995).

Rule 32(d) of the Federal Rules of Criminal Procedure provides that a district court may permit a defendant to withdraw a guilty plea prior to sentencing upon a showing of "any fair and just reason," and we have held that the defendant bears the burden of establishing such a justification. United States v. Yell, 18 F.3d 581, 582 (8th Cir. 1994). While a defendant seeking to withdraw a

3

plea before sentencing is given a more liberal consideration than someone seeking to withdraw a plea after sentencing, "a defendant has no absolute right to withdraw a guilty plea before sentencing," and the decision to allow or deny the motion remains within the sound discretion of the trial court. United States v. Boone, 869 F.2d 1089, 1091 (8th Cir.), cert. denied, 493 U.S. 822 (1989). Factors to consider in determining whether to set aside a plea of guilty include whether the defendant has demonstrated a fair and just reason, whether the defendant has asserted his innocence, the length of time between the guilty plea and the motion to withdraw, and whether the government will be prejudiced. Id. at 1091-92.

The reasons offered by Prior for withdrawing his plea were that he was mentally incompetent due to substance abuse at the time he signed the plea agreement and that he did not knowingly and intelligently waive his constitutional rights. At the December 22, 1995, hearing on his motion to withdraw his guilty plea, Prior presented the testimony of a psychiatrist, Dr. Mark Souza, who concluded that because Prior was undergoing withdrawal from several controlled substances, he was unable to fully comprehend the agreement or appreciate its implications at the time he signed it on May 5, 1995. Dr. Souza further testified that Prior would have been competent by the time of the plea hearing on May 31, 1995, when the court accepted Prior's guilty plea. Prior asserts that because he had been incompetent when he signed the plea agreement and when it was explained to him, his plea was not knowing and voluntary at the May 31, 1995, plea hearing.

Prior was competent at the time of the plea hearing, and he cannot seriously argue otherwise. Furthermore, the transcript of the plea hearing indicates that Prior understood his rights. The Assistant United States Attorney summarized the plea agreement in court, explaining that under the agreement Prior is subject to a mandatory minimum term of life imprisonment, he has agreed to cooperate with the government, and upon a government motion, there

4

may be a possibility of reducing his sentence below the mandatory minimum if he provides substantial assistance. (Plea Tr. at 11-12.) The district court asked Prior if he was able to follow the government's summary description of the plea agreement. Prior replied, "Yeah, I was, because I've read it a couple of times myself." (Id. at 13.) Prior also stated that he had understood its terms at the time he signed the agreement and that he had been given a full opportunity to confer with counsel about this matter. The district court carefully explained to Prior his constitutional rights, including the right to trial by a jury, to confront the witnesses against him, and to put the government to its proof. Prior indicated that he understood that he had the right to go to trial and have his case decided by a jury if he so chose. (Id. at 25.) Prior indicated that he understood and voluntarily waived all his trial-related constitutional rights. Prior provided an adequate factual basis for the plea, admitting to possessing 3 1/2 pounds of methamphetamine with intent to deliver. Additionally, at the hearing on his motion to withdraw the plea, Prior testified that he had told the truth at the May 31, 1995, plea hearing.

We agree with the district court's conclusion that Prior, who at all times was represented by counsel, knowingly and voluntarily waived his rights and pled guilty to the charge at the plea hearing on May 31, 1995. Thus, Prior's asserted fair and just reason to withdraw his plea cannot carry the day. Additionally, he did not assert his innocence of the charges and he waited approximately five months before seeking to withdraw his plea. We conclude that the district court did not abuse its discretion in denying Prior's motion to withdraw his guilty plea.

**III.**

Prior raises several constitutional challenges to his sentence. Specifically, he contends that the mandatory life sentence, imposed pursuant to 21 U.S.C. § 841(b)(1)(A)(viii),

5

violates his rights to due process and equal protection under the Fifth Amendment, his right to be free from cruel and unusual punishment under the Eighth Amendment, and the doctrine of separation of powers. "The question of whether a statute is constitutional is a question of law and must be reviewed de novo." United States v. Wesley, 990 F.2d 360, 363 (8th Cir. 1993).

First, Prior contends that the mandatory life sentence violates his due process rights, arguing that the statute deprives the district court of discretion to impose an individualized sentence. Where capital punishment is not involved, however, an individualized sentencing determination is not a constitutional imperative. United States v. Goodface, 835 F.2d 1233, 1236, 1237 n.4 (8th Cir. 1987). See Harmelin v. Michigan, 501 U.S. 957, 995 (1991) (plurality) (recognizing the Court's repeated holding that there is no requirement comparable to the "individualized capital sentencing doctrine" outside the capital context due to "the qualitative difference between death and all other penalties"). "[D]ue process is not violated merely because a statute divests the trial judge of discretion to sentence as he might wish," even if the resulting effect is to place wide discretion in the hands of the prosecutor. Goodface, 835 F.2d at 1236. In noncapital cases, "Congress has the power to define criminal punishments without giving the courts any sentencing discretion." Chapman v. United States, 500 U.S. 453, 467 (1991); United States v. Hammer, 3 F.3d 266, 269 (8th Cir. 1993), cert. denied, 510 U.S. 1139 (1994). Consistent with its authority to do so, Congress has merely made a legislative choice in section 841(b) to deprive the courts of sentencing discretion.

Prior argues that the statute is overinclusive and violates due process because it does not differentiate between drug kingpins, who run large drug trafficking operations, and drug addicts, who may traffic in controlled substances only to make enough money to buy more drugs to feed their habit. We find no due

process violation. "Absent classifications based on race or some other forbidden or suspect ground, legislative decisions of the sort here in question -- how severely to punish a particular class of drug-trafficking crimes -- need only have a rational basis to survive" a due process challenge. United States v. Frieberger, 28 F.2d 916, 921 (8th Cir. 1994), cert. denied, 115 S. Ct. 765 (1995). Section 841(b) rationally serves to discourage illegal drug trafficking activity by imposing a mandatory minimum life sentence upon any defendant convicted of violating section 841 who was criminally responsible for a certain quantity of drugs and who also has a record of two or more felony drug convictions. Drug addicts who traffic in illegal substances contribute to the same problem addressed by the statute as do so-called drug kingpins who engage in drug trafficking solely for profit. "That distributors of varying degrees of culpability might be subject to the same sentence does not mean that the penalty system . . . is unconstitutional." Chapman, 500 U.S. at 467.

Prior contends that the unbridled prosecutorial discretion to allow some, but not all, defendants to avoid life in prison in exchange for their cooperation offends the Equal Protection Clause. We disagree. Defendants convicted of section 841(a) are not all similarly situated with regard to their ability to provide substantial assistance to aid the government in further prosecutions. Allowing prosecutors to provide the benefit of a motion for a sentence below the mandatory minimum only to those who are capable of providing substantial assistance to the government is rationally related to the legitimate government interest in prosecuting criminal conduct. We have previously determined that a sentencing scheme that removes discretion from the courts but builds in a safety-valve adjustment "predicated on the reasonable assumption that the government is in the best position to supply the court with an accurate report of the extent and effectiveness of the defendant's assistance," does not violate due process. United States v. Grant, 886 F.2d 1513, 1514 (8th Cir. 1989)

(internal quotations omitted).  Likewise, we now determine that this scheme does not offend equal protection rights.  <u>Accord</u> <u>United States v. Van Winrow</u>, 951 F.2d 1069, 1073 (9th Cir. 1991).

We note that there is no assertion here that the prosecutor acted in bad faith by denying Prior a motion for substantial assistance.  In fact, the government offered Prior the opportunity to benefit from this "prosecutorial grace," as Prior calls it (Appellant's Br. at 27), but he refuses to provide the government with any assistance at all.  Prior flatly asserts that he will not aid the government in arresting any more people.  (<u>See</u> Sent. Tr. at 45.)  Unfortunately, his steadfast refusal to offer any help renders the courts unable to provide him with any relief from the congressionally mandated life sentence to which he is subject.[2]

Next, Prior asserts that his sentence violates his right to be free from cruel and unusual punishment because the life sentence is grossly disproportionate to his crime.  Prior argues that his sentence is disproportionate because he is an addict and, until the time of his arrest on this charge at the age of 45, he had never spent a day in jail because his three previous felony drug convictions yielded no more than suspended sentences and fines.

---

[2]At the sentencing hearing, the district court clearly expressed to Prior that he is, in effect, needlessly confining himself to life imprisonment by his refusal to provide substantial assistance.  Judge Longstaff explicitly told Prior the following:

> You're making me do something I hate doing today . . . you're making me send you to jail for life, and I don't want to do that, and I hope someday that in the next approximately 365 days I have a chance to revisit this sentence and give you a just sentence and prove to you that the system works; but unfortunately, Reed, under the law, right or wrong, you're the only person right now that holds the key to unlock the handcuffs that bind me right now, and I hope someday in the next year you'd make a decision to give me a chance to do what's right.

(Sent. Tr. at 43-44.)

8

Prior asserts that he is capable of leading a productive life as he was an excellent student who completed a Bachelor of Arts degree in history and a Master of Arts degree in education. Thus, Prior claims that his life sentence is disproportionate to his crime.

The Eighth Amendment "forbids only extreme sentences that are `grossly disproportionate' to the crime." Harmelin, 501 U.S. at 1001 (opinion of Kennedy, J., concurring in part and concurring in the judgment) (quoting Solem v. Helm, 463 U.S. 277, 288, 303 (1983)); accord Frieberger, 28 F.d at 920; United States v. Jones, 965 F.2d 1507, 1518 (8th Cir.), cert. denied, 506 U.S. 924 (1992). Our review to determine whether a sentence is grossly disproportionate is quite narrow. Frieberger, 28 F.3d at 920.

While Prior's sentence is harsh, we conclude that it is not grossly disproportionate given the equally serious nature of his crime. The Supreme Court concluded in Harmelin that a state sentence of mandatory life imprisonment without the possibility of parole for possessing 672 grams of cocaine did not violate the Eighth Amendment, despite the fact that the defendant had no prior felony convictions. 501 U.S at 994 (plurality). In this case, Prior has a record of three prior drug felony convictions, and he was held responsible for possessing with intent to distribute 1,147.6 grams of methamphetamine. Comparing this case with the facts of Harmelin leads us to conclude that Prior's sentence does not violate the Eighth Amendment's ban on cruel and unusual punishments.

Prior seems to assert that because he is an addict, he is not as deserving of a life sentence as so-called drug kingpins. A comparison of his conduct with that of even larger-scale distributors, however, is not relevant to our analysis. Such a proportional analysis is only appropriate after an initial comparison of the crime to the sentence for which it is imposed leads to an inference of gross disproportionality. United States

9

v. Johnson, 944 F.2d 396, 409 (8th Cir.) (relying on Harmelin), cert. denied, 502 U.S. 1008 (1991). We have noted that the possession of narcotics with the intent to distribute is an offense "at the root of some of the gravest problems facing our country. The `fruit' of the drug plague is everywhere; it fills our jails, our courts, our streets, and our nurseries." United States v. Meirovitz, 918 F.2d 1376, 1381 (8th Cir. 1990), cert. denied, 502 U.S. 829 (1991). Prior's three previous convictions indicate that he has been involved in drug distribution for many years, and his actions have furthered the spread of this plague. Life imprisonment without the possibility of parole in this circumstance is not grossly disproportionate to the offense. As an aside, it is again worth noting that Prior has been given the opportunity to attempt to reduce this sentence himself by providing substantial assistance to the government, and he steadfastly refuses to do so.

Finally, Prior argues that section 841(b) is unconstitutional under the doctrine of separation of powers. The district court can depart from the mandatory minimum sentence only if the prosecution makes a motion for departure on the basis that the defendant has provided substantial assistance, and Prior argues that this usurps the function of the judiciary. We have previously rejected this argument, see United States v. Mason, 902 F.2d 1314, 1316 (8th Cir. 1990), and one panel is not at liberty to overrule a decision of another panel. Mack v. Caspari, 92 F.3d 637, 641 n.6 (8th Cir. 1996). Accordingly, we reject this argument without further discussion.

## IV.

Prior also challenges the constitutionality of 21 U.S.C. § 851(e), which is a statute of limitations provision that prohibits defendants from challenging "the validity of any prior conviction alleged under this section which occurred more than five years before the date of the information alleging such prior

10

conviction."  Two of Prior's previous convictions occurred more than five years earlier, and the district court did not permit Prior to attack their validity.  Prior contends that section 851(e) provides an arbitrary and irrational classification that violates due process and equal protection. We disagree.

While we have not previously addressed this question, several of our sister circuits have squarely reached the issue.  They have determined that, except for the limited circumstance where a prior conviction was obtained in violation of the right to have counsel appointed, a defendant has no constitutional right to challenge a prior conviction used to enhance a current sentence, and accordingly, section 851(e) does not violate due process.  See  United States v. Gonzales, 79 F.3d 413, 426-27 (5th Cir.), 117 S. Ct. 183 (1996); United States v. Arango-Montoya, 61 F.3d 1331, 1338 (7th Cir. 1995); United States v. Davis, 36 F.3d 1424, 1438-39 (9th Cir. 1994), cert. denied, 115 S. Ct. 1147 (1995); United States v. Williams, 954 F.2d 668, 673 (11th Cir. 1992).  Several courts have also rejected an equal protection challenge to section 851(e).  See Gonzales, 79 F.3d at 426-27; Davis, 36 F.3d at 1438-39; Williams, 954 F.2d 668, 673.  No court has sustained a constitutional attack against this provision.

Because no suspect class or fundamental right is at issue,[3] the ban against challenging convictions over five years old need only be supported by a rational legislative purpose.  The five-year ban, which applies equally to all recidivists to whom the statute applies, rationally serves the legitimate purpose of avoiding the costs and other problems associated with keeping court records indefinitely.  Davis, 36 F.3d at 1438.  Prior argues that a five-year cutoff point is arbitrary, but we do not find it to be unconstitutional.  Five years is a reasonable amount of time to

---

[3]Prior does not claim that his prior convictions were secured without the benefit of counsel.

11

require court documents to be preserved without the requirement becoming overly burdensome. Any cutoff point for the right to collaterally challenge a prior conviction will sound somewhat arbitrary, but we conclude that the five-year mark is rationally related to the goals of the statute. We agree with the conclusion of our sister circuits that "[s]ection 851(e) is wholly reasonable, both to effectuate the legitimate purposes of enhanced sentencing for recidivists, and to eliminate a host of practical problems with respect to ancient records absent such a provision." Arango-Montoya, 61 F.3d at 1338 (internal quotations omitted); accord Davis, 36 F.3d at 1438-39; Williams, 954 F.2d at 673. Accordingly, we join those circuits that have held that section 851(e) does not violate due process or equal protection, and we conclude that the district court properly applied it to preclude Prior from challenging the validity of two of his previous convictions.

**V.**


Finally, Prior contends that his conviction should be set aside because he was denied the effective assistance of counsel. Claims of ineffective assistance are ordinarily reserved for collateral attack, but we may consider such a claim where the record is established and there is no need to develop additional facts. United States v. Martin, 62 F.3d 1009, 1012 (8th Cir. 1995), cert. denied, 116 S. Ct. 1556 (1996). We will consider Prior's claim because his argument does not incorporate or depend upon the development of facts outside the original record. See id.


To make out a claim of ineffective assistance of counsel during the plea process, a defendant must first demonstrate that counsel's performance was deficient, which requires a showing that the representation fell below an objective standard of reasonableness. Strickland v. Washington, 466 U.S. 668, 687-88 (1984); see also Hill v. Lockhart, 474 U.S. 52, 57 (1985) (holding Strickland's two-part standard applies to ineffective assistance

12

claims arising out of the plea process).  Second, the defendant must demonstrate prejudice, that is, that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill v. Lockhart, 474 U.S. 52, 59 (1985); see Strickland, 466 U.S. at 687.

Prior contends that he received ineffective assistance of counsel when he signed the plea agreement on May 5, 1995, while incompetent, and at the plea hearing on May 31, 1995.  At the plea hearing, Prior's attorney stated that he moved quickly with the plea agreement in order to timely preserve for Prior the possibility of avoiding a life sentence by providing substantial assistance.  Prior's attorney stated that it was apparent very early on that Prior would be subject to a mandatory life sentence, given the quantity of methamphetamine in his possession when he was arrested and his three prior felony convictions.  (Plea Tr. at 22-23.)  Counsel acknowledged that he had considered the strength of the government's case and asserted that while he had explored the possible defenses that might be available, none were feasible.  (Id. at 23-25.)  Prior's attorney stated, "we determined that Mr. Prior, who had cooperated with the government initially and, faced with the overwhelmingly severe sentence that he was looking at, needed to provide the government with some substantial assistance in order to have any hope of avoiding the mandatory life imprisonment."  (Id. at 22-23.)  Although Prior now refuses to provide any assistance to the government, counsel's strategy was reasonable and prudent, and Prior consented to it.  The fact that this strategy has now proven unsuccessful because Prior refuses to cooperate does not render counsel's performance deficient.  See James v. State of Iowa, 100 F.3d 586, 590 (8th Cir. 1996) ("Reasonable trial strategy does not constitute ineffective assistance simply because it is not successful.")  We conclude that, in the face of a very strong case against Prior, counsel provided objectively reasonable representation by timely securing an opportunity for Prior to provide substantial assistance in the

13

hope of securing a sentence of less than life imprisonment. We reject Prior's attempt to lay off on his experienced and able counsel the consequences of his own criminal conduct and the statutorily mandated result of his adamant refusal to help himself.

Even if counsel's performance could be considered deficient because of Prior's withdrawal from substance abuse at the time he signed the agreement, a conclusion we specifically reject, there is no credible evidence that Prior would not have pleaded guilty had he been competent when he signed the agreement. As noted above, Prior was competent at the plea hearing on May 31, 1995. The government had a strong case against Prior that would send him to prison for life absent a government motion for departure based on substantial assistance. Prior provided a factual basis for the plea and was advised of all his rights. Prior testified that he knew he faced a life sentence. During the plea hearing, the Assistant United States Attorney recited a summary of the plea agreement, including the provision allowing Prior an opportunity to provide substantial assistance to the government in order to avoid the life sentence. Prior indicated that he understood because he had read the agreement a couple of times himself. He indicated that this was a correct statement of what he had agreed to and that it included nothing that he did not agree to. (Plea Tr. at 13-14.) Also, the district court carefully informed Prior of his right to a trial and that "if I accept this plea of guilty today, there will be no trial." (Id. at 27.) Prior indicated that he understood and waived his rights. There simply is no credible evidence to indicate that Prior would have insisted upon going to trial had he not signed the plea agreement while in withdrawal. Thus, Prior was not prejudiced by his counsel's conduct.

14

**VI.**


We conclude that the trial court committed no reversible error and that Prior received the effective assistance of counsel.  Accordingly, we affirm the judgment of the district court.


A true copy.


Attest:


CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.


15