IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-20811
_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EDUARDO MORALES,

Defendant-Appellant.
_____

Appeal from the United States District Court for the
Southern District of Texas, Houston Division
_____

November 5, 2001

Before KING, Chief Judge, and JOLLY and EMILIO M. GARZA, Circuit
Judges.

E. GRADY JOLLY, Circuit Judge:

Eduardo Morales was an 18-year-old student at Milby High

School in Houston, Texas at the time of the internet communications

at issue. He entered an internet chatroom and, in a conversation

with a stranger in the state of Washington, threatened to shoot and

kill students at Milby High. The stranger alerted the police, who

ultimately traced the communications to Morales. He was indicted

for knowingly and intentionally transmitting in interstate commerce

a threat to injure another in violation of 18 U.S.C. § 875(c).[1] He

_____

[1]Section 875(c) reads:

was convicted by a jury and sentenced to twenty-four months probation.  Based on this court's earlier decision in <u>United States v. Myers</u>, 104 F.3d 76, 79 (5th Cir. 1997), we affirm the conviction of Morales and the district court's holdings.

I

Morales's conviction stemmed from an internet conversation Morales had with Crystal Lees, a 26-year-old mother of two living in Puyallup, Washington, whom Morales did not know at the time.  Both Morales and Lees were in a "Young Latinos" chat room when Morales, using the screen name "Fusion_2", sent an instant message directed to Lees, who was using the screen name "Crystalita."[2]  The following exchange via instant messages ensued:

```
Morales:  I will kill
Lees:     huh? - me
          You will kill what - me
Morales:  TEACHERS AND STUDENTS AT MILBY
Lees:     Why do you want to do that
          Where is Milby?
Morales:  CAUSE AM TIRED ......HOUSTON
Lees:     are you really going to go and kill people
          Who has made you mad
          r u ok do you want to talk to me
Morales:  YES F NE ONE STANDS N MY WAY WILL SHOT
Lees:     r u ok
Morales:  I HATE LIVE
```

---

Whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both.

[2]Morales testified that he chose to communicate with Lees simply because her screen name was the first one on the chat room "whisper list."

```
Lees:      I am here
Morales:   YES MY NAME S ED HARRIS
           SEE U N A COUPLE OF MONTHS
```

Lees alerted the police because she was concerned about the well-being of Milby High School students. Milby High School's principal was informed, and he increased security measures at the school.

That same day, police traced the screen name "Fusion_2" to a friend of Morales, who informed the police that Morales had been using his WebTV internet terminal device. Morales was arrested after admitting that he was the individual who had parlayed with Lees in the chat room. However, Morales insisted that he was only joking. He told police he was trying to joke that he was the ghost of Ed Harris, whom he mistakenly thought was the assailant at Columbine High School, who in fact was Eric Harris.

Morales filed a pretrial motion to dismiss the indictment on First Amendment grounds, arguing that his statements to a distant third party did not constitute a true threat under Supreme Court jurisprudence. That motion was denied. During the jury trial, Morales moved for a judgment of acquittal, asserting again that no true threat was made because the statements were made to a third party. He also argued that no evidence established that he made the statements with the intent to intimidate. Again, the motions were denied.

Morales then objected to the court's proposed jury instruction

that the government was not required to prove that Morales subjectively intended to communicate a threat.  The court rejected his proposed instructions that 1) the government must prove that the defendant has communicated the threat to the target or someone he intended would communicate the threat to the target, and 2) that the government must prove that the defendant intended to make a threat.  The jury convicted Morales of the single § 875(c) count, charging him with knowingly and intentionally transmitting a threat to injure another.  The court thereafter denied Morales's post-verdict motions for judgment of acquittal and a new trial.

On appeal, Morales challenges his conviction on three grounds. First, Morales argues that his communication was not a "true threat" given the context in which it was delivered. Second, Morales asserts that his statements were not actionable under § 875(c) because they were communicated to a third party.  Third, Morales argues that the district court erred by not instructing the jury that the government must establish that Morales intended to communicate a threat.

II

We review de novo the denials of Morales's motions for judgment of acquittal.  United States v. DeLeon, 170 F.3d 494, 496 (5th Cir. 1999).  "In evaluating the sufficiency of the evidence, this court asks 'whether a reasonable trier of fact could have found that the evidence established the essential elements of the

4

crime beyond a reasonable doubt.' We consider the evidence in the light most favorable to the verdict, drawing all reasonable inferences in favor of the verdict. 'It is well-settled that credibility determinations are the sole province of the jury.'" United States v. Cathey, 259 F.3d 365, 368 (5th Cir. 2001) (citations omitted).

### A

We first address whether Morales's statements constituted a "true threat." In this circuit, a communication is a threat under § 875(c) if "in its context [it] would have a reasonable tendency to create apprehension that its originator will act according to its tenor." United States v. Myers, 104 F.3d 76, 79 (5th Cir. 1997), citing United States v. Bozeman, 495 F.2d 508, 510 (5th Cir. 1974) (citations and internal quotations omitted). Prosecution under § 875(c) "requires proof that the threat was made knowingly and intentionally." Myers, 104 F.3d at 79. An act is performed "knowingly" when it is done voluntarily and intentionally, and not because of mistake or accident. See id. "A threat is knowingly made if the maker of it comprehends the meaning of the words uttered by him, and a threat is willfully made if in addition to comprehending his words, the maker voluntarily and intelligently utters the words as a declaration of an apparent determination to carry out the threat." United States v. Pilkington, 583 F.2d 746, 747 (5th Cir. 1978) (citation omitted).

However, "[b]ecause § 875(c) contains nothing suggesting a specific intent requirement, it defines only a general intent offense." Myers, 104 F.3d at 81. The Supreme Court has held that "a statute such as this one, which makes criminal a form of pure speech, must be interpreted with the commands of the First Amendment clearly in mind. What is a threat must be distinguished from what is constitutionally protected speech." Watts v. United States, 394 U.S. 705, 707 (1969).

Before analyzing a defendant's willfulness or intention, the Supreme Court has noted that federal statutes prohibiting threats "initially require[] the Government to prove a true threat." Id. at 708. The Court distinguished "political hyperbole" from a "true threat," and recognized the importance of examining statements "in context" to determine whether they are true threats punishable by law. Id. Thus, in Myers we determined that "[i]n order to convict, a fact finder must determine that the recipient of the in-context threat reasonably feared it would be carried out." 104 F.3d at 80, citing Bozeman, 495 F.2d at 510.

Morales admitted making the statements. He admitted more, however: that he did it to see how Lees would react. Morales further testified that he could see why Lees "would get scared or why she reacted the way she did." Morales admitted that he was aware of a prior incident in which a student at Milby had made

6

threats over the internet,[3] and that he knew it was wrong to do so. Under Myers all that is required is general intent. 104 F.3d at 81. It is up to the jury to decide whether Morales made the statements knowingly and intentionally. Id. at 78. There was sufficient evidence to support the jury's finding that Morales acted with knowledge and intent.

Additionally, however, the trier of fact must have found that the communication "in its context would have a reasonable tendency to create apprehension that its originator will act according to its tenor." Id. at 79. The jury was presented with evidence that Lees felt apprehension that "Fusion_2" would act on his threat to kill. Morales repeated his threats to kill several times, and gave no indication that he was joking. Morales admitted that he attempted to refer to Eric Harris, one of the perpetrators of the Columbine High School killings. Thus, his statement in context cannot be divorced from the reality of that tragedy. We should also observe that the context of Morales's statement is different from that in Watts. Unlike Watts, Morales was not engaged in political speech as part of a public debate, in which the listeners laughed in response to Watts's comments. See Watts, 394 U.S. at 708. Given these factors and the length of the communication between Morales and Lees, a reasonable juror could find all the

_____

[3]Morales gave conflicting testimony on whether he was aware that the other student had been charged with a crime as a result of his statements.

7

facts necessary to make Morales's communication a "true threat."

B

Morales contends, however, that his statements cannot, as a matter of law, constitute a true threat because they were made to a random third party who had no connection with Milby High School.

Our precedent does not allow for this distinction. For example, in Myers, the defendant was a Vietnam veteran with a history of mental illness. In two telephone conversations he directly threatened a member of his congressman's staff. In a third telephone conversation, Myers communicated a threat against the Veterans Administration and Congress to an employee of the Paralyzed Veterans of America ("PVA"). Myers was convicted on three separate counts of violations of § 875(c) for each individual phone call. This court affirmed Myers's conviction, drawing no distinction between the threat made to the PVA and two other threats communicated directly to their targets. Myers, 104 F.3d at 77-78. Again, the focus was on whether the threat "in its context would have a reasonable tendency to create apprehension that its originator will act according to its tenor." Myers, 104 F.3d at 78, quoting Bozeman, 495 F.2d at 510. It is this character and context of the threat that is the relevant test. As discussed in the previous section, the jury found a reasonable tendency to create such apprehension in this case, and there is no basis for us to disturb the jury's findings.

8

The government notes that it has never been required to show an intent to communicate the threat to the intended victim under § 875(c). The language of § 875(c) does not require that the threat be made directly to the intended target; it simply prohibits "any threat to injure the person of another" made in interstate commerce. Moreover, as we have pointed out, our precedent in Myers does not require that the threat be made directly to the victim. Based on Myers and the text of § 875(c), we hold that Morales's statements are actionable under the federal statute.

III

Morales also challenges the instructions given the jury at the close of his trial. The jury was instructed, in relevant part:

> The Government does not have to prove that the defendant subjectively intended for the recipient to understand the communication as a threat. The Government also does not have to prove that the defendant actually intended to carry out the threat.

Morales objected to this instruction, instead offering that the jury be instructed that it must find that Morales "understood and meant [his] words as a threat" and that Morales "sent the words knowingly and willfully, that is, intending them to be taken seriously."[4]

We review the rejection of a requested jury instruction for

---

[4]Morales also challenges the district court's refusal to include an instruction requiring the jury to find that Morales intended for Lees to communicate the threat to its target. This issue is disposed of by our addressing direct and third-party threats.

9

abuse of discretion, "affording the trial judge substantial latitude in tailoring [the] instructions." United States v. Turner, 960 F.2d 461, 464 (5th Cir. 1992). The refusal to accept a requested instruction is reversible error only if the requested instruction "1) is substantively correct; 2) was not substantively covered in the charge actually delivered to the jury; and 3) concerns an important point in the trial so that the failure to give it seriously impaired the defendant's ability to effectively present a defense." Id. Morales's proposed instructions were not substantively covered in the actual jury instructions and did concern an important point in the trial; thus the question is whether prosecution under § 875(c) requires a showing that the defendant intended to make a threat.

Again, the Myers decision answers the question. There, we specifically rejected the defendant's claim that the district court erred by refusing a jury instruction requiring a finding that Myers intended his statements to be threats. Noting that "[a]s a straightforward matter of textual interpretation, we will not presume that a statutory crime requires specific intent in the absence of language to that effect," and recognizing that "§ 875(c) contains nothing suggesting a specific intent requirement," we held that the government was not required to prove that the defendant intended the statements to be threats. Myers, 104 F.3d at 80-81. The jury instructions rejected here were essentially the same. So

we can only conclude that, given that § 875(c) requires only general intent, the district court's denial of Morales's requested jury instruction was not an abuse of discretion.

IV

For the reasons we have explained, the district court did not err in denying Morales's motions for judgment of acquittal, nor in denying Morales's requested jury instructions. The judgment of conviction is therefore

AFFIRMED.