**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 10, 2009

Charles R. Fulbruge III
Clerk

No. 08-40275
Summary Calendar

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

JAMES WILEY STINNETT, JR

Defendant-Appellant

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 1:07-CR-13-ALL

Before HIGGINBOTHAM, BARKSDALE, and ELROD, Circuit Judges.

PER CURIAM:[*]

James Wiley Stinnett, Jr., appeals his convictions and sentence for three offenses arising from his sending a threatening fax to an agent of the Department of Homeland Security, Bureau of Immigration and Customs Enforcement (ICE). After Stinnett's new Russian wife, Natalia, left him, he sought ICE's assistance in finding and returning Natalia to him. Becoming frustrated with ICE's failure or refusal to go after Natalia, Stinnett composed a crude and threatening letter to ICE Special Agent James Estes in Texas. The

---

[*] Pursuant to Fifth Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Fifth Circuit Rule 47.5.4.

fax was fashioned as being from Natalia. In rambling, broken English, "Natalia" threatened to kill Agent Estes with a gun or a bomb planted at the ICE's Beaumont office, because Estes knew too much about her.

Based on his familiarity with Stinnett, Estes suspected that the fax was from Stinnett. Subsequent investigation appeared to corroborate that theory. A jury ultimately agreed and convicted Stinnett on four counts arising from his creation and transmission of the threatening fax. The first count of conviction charged that Stinnett used a means of interstate commerce to convey a false bomb threat to the ICE office in violation of 18 U.S.C. § 844(e). The second count charged Stinnett with threatening to murder Estes, a federal official, in violation of 18 U.S.C. § 115. The third count charged that Stinnett transmitted a communication containing a threat to kill or injure another person, Estes, in violation of 18 U.S.C. § 875(c). The fourth count, which was dismissed after trial, charged Stinnett with concealing his criminal activities. The court sentenced Stinnett to 37 months of imprisonment, at the bottom of the advisory guidelines range.

The sufficiency of the evidence

Stinnett contends that there was insufficient evidence that he created the threatening fax. ICE agents traced the fax to a FedEx/Kinko's (Kinko's) store in Tulsa and later learned that Stinnett had sent a fax from that store at the time the threatening fax was sent. The Kinko's manager positively identified Stinnett after she remembered offering to help him send the fax. In addition, agents found in Stinnett's car a Kinko's receipt for sending the fax, dated the same day that the threatening fax was sent. Agent Estes testified that he believed the fax came from Stinnett because it was consistent with Stinnett's obsession with getting ICE to find Natalia and with Stinnett's insinuations that Natalia was a terrorist. Estes also testified that ICE investigations indicated that Natalia was somewhere in New Mexico rather than in Tulsa where the fax originated. The author of the fax also addressed Estes as "J.R.," a nickname

known by Stinnett but not believed to be known by Natalia. This evidence and the reasonable inferences therefrom, when viewed in the light most favorable to the verdict, would allow any reasonable jury to conclude that Stinnett created the fax and caused it to be transmitted from Oklahoma to Estes in Texas. *See United States v. Kay*, 513 F.3d 432, 452 (5th Cir. 2007).

Stinnett contends that the fax did not contain a "true threat" as is required to distinguish criminal speech from constitutionally protected speech. A statute punishing pure speech must necessarily punish only true threats and not constitutionally protected speech, such as political hyperbole. *Watts v. United States*, 394 U.S. 705, 707–08 (1969); *United States v. Morales*, 272 F.3d 284, 287 (5th Cir. 2001). A communication is a true threat if "in its context [it] would have a reasonable tendency to create apprehension that its originator will act according to its tenor." *Morales*, 272 F.3d at 287.

The fax contained plain, direct, and repeated threats to kill Estes, either by exploding a bomb at the ICE building or by shooting him in the head. Estes testified that he was concerned for his safety and his family's safety in light of the threats, which he believed to be from a frustrated Stinnett. Investigators responded to the threats by conducting a security sweep of the ICE building and notifying the Beaumont police. Estes was sent home and a security watch was set up at his house. This evidence was sufficient to allow a reasonable jury to conclude that the threats created a reasonable apprehension in Estes and ICE. *See Morales*, 272 F.3d at 287; *Kay*, 513 F.3d at 452.

Stinnett contends that the Government failed to prove that he acted willfully, as required for a conviction under § 844(e). The same evidence establishing that Stinnett created and transmitted the threats also shows that he did so willfully, and not due to mistake or accident. *See Morales*, 272 F.3d at 287; *Kay*, 513 F.3d at 452.

Stinnett contends that the Government failed to prove a substantial economic nexus with interstate commerce. The interstate nexus requirement for

Stinnett's crimes is satisfied by the use of a telephone, even in intrastate commerce. *United States v. Marek*, 238 F.3d 310, 318–19 & n.35 (5th Cir. 2001) (also listing other communication devices).

Stinnett fails to show that the Government's proof was lacking as to any element of any crime of conviction. The evidence was therefore sufficient to convict Stinnett on all counts for which he was sentenced.

The Government's closing argument

Stinnett contends that the Government's attorney made a highly prejudicial remark in his closing argument. James Van Stephens, an ICE agent, testified that the Kinko's manager identified Stinnett partly by looking at his driver's license photo which Stephens showed her. The defense cross-examined Stephens about why he showed only one photo instead of an array of photos. Immediately after Stephens was excused, the Government recalled him to the stand where he testified that he intended to present a multi-photo array to the Kinko's manager but that technical problems prevented him for obtaining other photos for a photo line-up.

The defense asserted in its closing argument that Stephens had lied about his photo identification practices. The Government's attorney responded by telling the jury, "As [Agent Stephens] was leaving, testifying, he wanted to make sure that I had him explain to you why he showed one [photo.]" The defense immediately objected on grounds that the prosecutor's statement about what Stephens told him was an assertion of a fact not in evidence. The court sustained the objection and admonished the jury to ignore the Government's assertion about what anyone might not have told the prosecutor. The court denied Stinnett's motion for a mistrial.

We determine whether the Government's remarks were improper and "whether they prejudicially affected substantive rights of the defendant." *United States v. Parker*, 877 F.2d 327, 332 (5th Cir. 1989). To determine whether the prosecutor's comments affected the defendant's substantial rights, we examine

"(1) the magnitude of the statement's prejudice, (2) the effect of any cautionary instructions given, and (3) the strength of the evidence of the defendant's guilt." *United States v. Tomblin*, 46 F.3d 1369, 1389 (5th Cir. 1995) (internal quotation marks and citation omitted); *Parker*, 877 F.2d at 332.

The Government's assertion that Stephens wanted to explain why he showed Seville only one photograph was a reference to facts not in evidence. Nonetheless, any connection between Stinnett's guilt and the issue of whether the explanation of the identification process was Stephens's idea or the prosecutor's was, at most, tenuous and remote. In addition, the trial court promptly instructed the jury to disregard the statement, and the jury is presumed to have done so. *Tomblin*, 46 F.3d at 1390. Moreover, there was ample evidence of guilt. The effect of Government's innocuous remark was negligible and provides no basis for reversing Stinnett's conviction.

The district court's *Allen* charge

Stinnett contends that the district court's *Allen* charge was coercive. After deliberating for about four hours, the jury stated that it had reached a verdict on three counts but was deadlocked on one count. The Government asked the court to give this circuit's modified *Allen* charge urging the jurors to continue deliberating. *See Allen v. United States*, 164 U.S. 492, 501 (1896) (approving of supplemental instruction that basically urged the jurors to consider each others' opposing views in order to reach a unanimous verdict). The defense objected. The court gave the charge.

We review the giving of the *Allen* charge for abuse of discretion. *United States v. Winters*, 105 F.3d 200, 203 (5th Cir. 1997). We ask whether any deviation from our approved *Allen* charge was prejudicial enough to require reversal and whether the circumstances surrounding the charge were coercive. *Id.*

The district court's charge was substantively indistinguishable from this court approved pattern charge. *See* FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS

5

(CRIMINAL), § 1.45 (West 2001); *Winters*, 105 F.3d at 204. Accordingly, there is no prejudicial difference between the given charge and the approved *Allen* charge. Further, nothing in the record or in Stinnett's argument reveals any coercive circumstance surrounding the charge. The district court did not abuse its discretion by giving the charge.

The reasonableness of the sentence

Stinnett contends that his sentence is unreasonable. He does not contend that the advisory guidelines range was incorrect. Rather, he argues that the guidelines sentence should not be entitled to a presumption of reasonableness because it gives undue weight to the Sentencing Guidelines. A sentence within a properly calculated guidelines range is presumed reasonable. *United States v. Alonzo*, 435 F.3d 551, 554 (5th Cir. 2006); *see also Gall v. United States*, 128 S. Ct. 586, 597 (2007) (permitting appellate presumption of reasonableness). In addition, the district court engaged in a thorough discussion of the sentencing factors of 18 U.S.C. § 3553(a), including mitigating factors. Stinnett fails to show that his sentence is unreasonable.

The judgment of the district court is AFFIRMED.