**UNITED STATES of America,**
**Plaintiff,**

v.

**Robert James SCHUELLER,**
**Defendant.**

### Crim. No. 15–41(RHK/LIB)

United States District Court,
D. Minnesota.

Signed October 5, 2015

Julie E. Allyn, United States Attorney's Office, Minneapolis, MN, for Plaintiff.

Casey T. Rundquist, William J. Mauzy, Law Offices of William J. Mauzy, Minneapolis, MN, for Defendant.

## MEMORANDUM OPINION AND ORDER

RICHARD H. KYLE, United States District Judge

This matter is before the Court on Defendant's Motion to Withdraw Guilty Plea (Doc. No. 82). For the reasons that follow, this Court will deny the Motion.

Defendant was indicted on May 4, 2015, on three counts of using interstate commerce facilities in the commission of murder-for-hire, in violation of 18 U.S.C. § 1958(a). On May 26, 2015, the Government filed an Information charging Defendant with a single count of transmitting threats by interstate communication in violation of 18 U.S.C. § 875(c). That same day, Defendant pleaded guilty to the single charge in the Information under the terms of a written plea agreement, in exchange for the Government dismissing the Indictment. (Plea Agreement 1; Plea Hr'g Tr. at 37–38.) The plea-hearing transcript reflects the following factual basis:

> DEFENDANT: Well, I explained to [Edwards] that I wanted somebody intimidated, scared away, possibly beaten up.
>
> PROSECUTOR: Okay. And so by "possibly" it would include that you wanted some bodily injury caused to a specific victim?
>
> DEFENDANT: Correct.
>
> PROSECUTOR: And this specific victim turns out to be this C.A.; is that right?
>
> DEFENDANT: That is correct.
>
> \* \* \*
>
> PROSECUTOR: And during the course of these either calls or text conversations, you made significant enough or serious enough statements to Edwards expressing your intention to inflict bodily injury; is that true?
>
> DEFENDANT: That's true.

> PROSECUTOR: And you, whatever the words were, did you make it clear to Edwards that you were threatening to injure C.A.?
>
> DEFENDANT: Correct.
>
> \* \* \*
>
> PROSECUTOR: And you reached out to several people again looking for somebody to help cause bodily injury to specific victims; is that true?
>
> DEFENDANT: Correct.
>
> \* \* \*
>
> PROSECUTOR: Now you, by all these facts we've gone through, you are agreeing that you knowingly and intentionally did transmit these threats as charged in the Information; isn't that true?
>
> DEFENDANT: That is true.

(Plea Hr'g Tr. at 20–21, 23–24, 30.) The Court accepted Defendant's guilty plea and directed the preparation of a presentence investigation report. (Plea Hr'g Tr. at 37–8.) He has not yet been sentenced.

Following the guilty plea, the Supreme Court decided *United States v. Elonis*, 575 U.S. ——, 135 S.Ct. 2001, 192 L.Ed.2d 1 (2015), which concerned the *mens rea* component of 18 U.S.C. § 875(c), the statute under which Defendant pleaded guilty here. Section 875(c) provides: "Whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both." *Elonis*, however, held that the *mens rea* element of § 875(c) requires more than mere negligence. Prior decisions, including those from the Eighth Circuit, had held that the government need not prove a defendant specifically intended his or her statements to be threatening, just that a "reasonable recipient would have interpreted the defendant's communication as a serious

threat to injure." *United States v. Nicklas,* 713 F.3d 435 (8th Cir.2013). Now, a conviction under § 875(c) requires evidence that a "defendant transmit[ ] a communication for the *purpose* of issuing a threat, or with *knowledge* that the communication will be viewed as a threat." *Elonis,* 135 S.Ct. at 2012 (emphasis added).[1]

Defendant filed the present Motion, arguing that the factual basis established at the plea hearing is now insufficient to support his guilty plea. In particular, he contends that he did not intend any of his communications to be threatening—the statements were merely "requests for information, preliminary steps." He also argues that his guilty plea cannot stand because his statements were not communicated to the intended victim, nor were they supposed to be. The Government counters that Defendant's factual basis established during the plea colloquy continues to suffice post-*Elonis* and that Defendant is simply experiencing post-plea "buyer's remorse." (Gov't Mem. in Opp'n at 1, 11.)

██ A defendant may withdraw a plea of guilty after the court accepts the plea, but before it imposes sentence, if the defendant can show a fair and just reason for requesting the withdrawal. Fed. R. Crim. P. 11(d)(2)(B). Though a defendant has no absolute right to withdraw his or her guilty plea, more liberal consideration is given if the defendant can show a fair and just reason for requesting the withdrawal before sentencing. *United States v. Prior,* 107 F.3d 654, 657 (8th Cir.1997). A guilty plea is a solemn act not to be set aside lightly. *Id.* The decision to grant or deny withdrawal lies within the sound discretion of the trial court. *Id.*

██ An insufficient factual basis provides a fair and just reason for seeking withdrawal of a guilty plea. *United States v. Heid,* 651 F.3d 850, 856 (8th Cir.2011). A factual basis will support a guilty plea only "when the record contains sufficient evidence at the time of the plea upon which a court may reasonably determine that the defendant likely committed the offense." *United States v. Cheney,* 571 F.3d 764, 769 (8th Cir.2009) (quoting *United States v. Gamble,* 327 F.3d 662, 664 (8th Cir.2003)) (internal quotations omitted); Fed. R. Crim. P. 11(b)(3). Sufficient evidence to support a factual basis can be gleaned from the "prosecutor's summarization of the plea agreement and the language of the plea agreement itself, a colloquy between the defendant and the district court," or the facts set forth in the presentence report. *United States v. Christenson,* 653 F.3d 697, 700 (8th Cir.2011) (quoting *United States v. Orozco–Osbaldo,* 615 F.3d 955, 958 (8th Cir.2010)) (internal quotations omitted).

██ This Court finds that, despite *Elonis,* Defendant's sworn admissions in front of this Court still establish that he at least knowingly, if not intentionally, communicated a threat. In fact, he explicitly admitted at the hearing that he told Edwards he was "threatening to injure C.A." and wanted to hire a person to "intimidate[ ], scare[ ] away, [and] possibly beat[ ] up" C.A. (Plea Hr'g Tr. at 20–21, 23.) Defendant also manifested his intent to threaten by his actions. *See United States v. Barcley,* 452 F.2d 930, 934 (8th Cir.1971) ("considering the context in which [the threat] was written"); *accord United States v. Morales,* 272 F.3d 284, 288 (5th Cir.2001) (discussing how the court must look to the context in which the statements were made to determine intent). Over a period of several weeks, Defendant repeatedly called and texted Edwards to inquire whether he had found someone to intimi-

---

**1.** The Supreme Court explicitly left unanswered the question whether a defendant need act with purpose, knowledge, or reckless disregard. *Elonis,* 135 S.Ct. at 2013–14.

date and beat up C.A. (Plea agreement ¶ 2(e).) He went beyond taking preliminary steps when he then had an envelope containing $10,000 and information identifying C.A. and the vehicles he drove delivered to Edwards to give to that person. (*Id.* ¶ 2(c); Presentence Investigation Report ("PSR") ¶ 32.) These facts and circumstances show that Defendant took real and knowing steps to procure someone to make C.A. "go away."

Defendant's second argument—that his statements were not threats because they were not communicated to the victim—does not pertain to *Elonis*'s new interpretation of § 875(c) and is instead based on law that existed at the time he pleaded guilty.[2] However, because Defendant premised his motion on the change of law in *Elonis* and this argument is based on pre-existing law, this Court could reject this argument outright. Nonetheless, this Court must ensure that Defendant's actions still amount to a crime. Based on the following, this Court concludes that Defendant's statements to third parties constitute threats.

2. Additionally, Defendant argues that his statements are not "true threats" and thus fall within protected First Amendment speech. However, in *Watts v. United States*, the Supreme Court drew a distinction between statements regarding public and political issues and statements about private matters. 394 U.S. 705, 708, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969) (holding that "the kind of political hyperbole indulged in by petitioner" at a public rally in Washington, D.C., did not constitute a true threat). Thus, this Court will only analyze Defendant's statements as threats because they are not of the kind warranting special protection, as they arose out of a personal dispute with his ex-mistress and not out of matters of political philosophy.

3. Threatening statements communicated to third parties are consistently found to be threats under other federal threat statutes. *See United States v. Stewart,* 420 F.3d 1007, 1010–11 (9th Cir.2005) (finding a threat exist-

A statement is a threat if "it expresses an intention to inflict harm, loss, evil, injury, or damage on another." *United States v. Jongewaard,* 567 F.3d 336, 340 (8th Cir.2009). A communication—even one based on a contingency—that conveys an intent to injure another either in the present or in the future can also be a threat. *See United States v. Bellrichard,* 994 F.2d 1318, 1322–23 (8th Cir.1993). Section 875(c) does not require a threat "be made directly to the intended target; it simply prohibits any threat to injure the person of another made in interstate commerce." *Morales,* 272 F.3d at 288 (affirming § 875(c) conviction when defendant told random third party in online chatroom that he was going to kill students at his high school) (internal quotations omitted); *accord United States v. Rutherford,* 599 F.3d 817, 818–19 (8th Cir.2010) (affirming § 875(c) conviction based on underlying murder-for-hire plot where threatening statements were not communicated directly to the intended victims).[3]

Defendant's statements were specific and his target was identified; he wanted harm caused to C.A.[4] His statements to

ed under 28 U.S.C. § 115(a)(1)(B) where incarcerated defendant communicated statement to third-party cellmate about wanting a specific judge killed); *United States v. Cotner,* 657 F.2d 1171 (10th Cir.1981) (finding sufficient evidence of a threat under 18 U.S.C. § 876 where two letters were sent by defendant to third party recipients about a specific target in a murder-for-hire plot).

4. Compare *United States v. Wheeler,* 776 F.3d 736, 746 (10th Cir.2015) (finding sufficient evidence of a threat, and stating defendant's Facebook "posts do not simply *imply* that some individuals should be killed; they *explicitly* call for the killing of a number of individuals ... The posts do not merely state an imperative that some unknown third party should take violent action, instead, they call upon a specific party" to take action), *with United States v. Bagdasarian,* 652 F.3d 1113, 1119, 1122 (9th Cir.2011) (finding no explicit or implicit threat that defendant himself

the third parties were always the same—he "made serious enough statements to Edwards expressing [his] intention to inflict bodily injury" on C.A. (Plea Hr'g Tr. at 23.) He had his mind set on intimidating C.A. and making him "go away," whether or not Edwards was able to secure a person to do so.

Defendant further argues that because there was no connection "whatsoever" between Edwards and C.A. and the statements were never communicated to C.A., his statements could not have been threats. Defendant relies on *United States v. Fenton*, 30 F.Supp.2d 520, 526 (W.D.Pa.1998), to support this proposition. In *Fenton*, the defendant's statements to his insurance adjuster threatening to kill a congressman were held to not be threats because the statements were not made directly to the intended victim, with absolutely no connection between the recipient and the intended victim. *Id.* at 524. However, *Fenton* has been distinguished from other cases where the defendant's threat "was uttered much closer to a realistic target." *United States v. Murillo*, 234 F.3d 28, ——, 2000 WL 1568160, at *2 (5th Cir.2000). Here, there was at least some connection between Edwards and C.A., making this more akin to *Murillo* than to *Fenton*. Defendant, Defendant's wife, Edwards, and Defendant's ex-mistress/C.A.'s fiancé all knew each other and worked in the same building while Defendant was trying to hire a person to harm C.A. (PSR ¶¶ 7, 8, 13, 24.) In fact, this whole plot was uncovered when Edwards told Defendant's wife, while at work, what Defendant had asked him to do. (*Id.* ¶ 24.) Thus, there is sufficient evidence that Defendant's statements were threats, even though communicated solely to third parties. Therefore, Defendant's admissions in

his plea colloquy are sufficient to support his guilty plea, despite the changed interpretation of § 875(c).

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Defendant's Motion to Withdraw his Guilty Plea (Doc. No. 82) is **DENIED**.

would kill President, instead finding his statements an imperative that an unknown third party take action).