ACCEPTED
03-14-00669-CR
4520315
THIRD COURT OF APPEALS
AUSTIN, TEXAS
3/16/2015 6:05:31 PM
JEFFREY D. KYLE
CLERK

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
3/16/2015 6:05:31 PM
JEFFREY D. KYLE
Clerk

# COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS

_____

## CASE NO.
## 03-14-00669-CR

_____

## EX PARTE JUSTIN RIVER CARTER

_____

## APPEAL FROM THE 207th DISTRICT COURT
## COMAL COUNTY, TEXAS

_____

## BRIEF OF STATE-RESPONDENT

_____


**ORAL ARGUMENT
REQUESTED**

**CHARI L. KELLY**
**Texas Bar. No. 24057939**
**Comal County Criminal**
**District Attorney's Office**
**150 N. Seguin Ave., Suite 307**
**New Braunfels, Texas 78130**
**kellyc@co.comal.tx.us**
**(830) 221-1300**
**(830) 608-2008 (facsimile)**

**Attorney for State-
Respondent**

# IDENTITY OF PARTIES AND COUNSEL

**Trial Judge:**                The Honorable Jack H. Robison
                                District Judge of the 207th District Court of
                                Comal County

**State – Respondent:**         State of Texas

**Counsel:**                    Chari L. Kelly
                                Comal County Criminal
                                District Attorney's Office
                                150 N. Seguin Avenue, Suite 307
                                New Braunfels, Texas 78130

**Defendant – Applicant:**      Justin River Carter

**Counsel:**                    Chad P. Van Brunt
                                310 S. St. Mary's Street
                                Suite 1840
                                San Antonio, Texas 78205

                                Donald H. Flanary, III
                                Goldstein, Goldstein, & Hilley
                                310 S. St. Mary's Street
                                Suite 2900
                                San Antonio, Texas 78205

# TABLE OF CONTENTS

IDENTITIES OF INTERESTED PARTIES ........................................................... 2

TABLE OF CONTENTS .................................................................................. 3

TABLE OF AUTHORITIES ............................................................................. 5

STATEMENT OF THE CASE ........................................................................... 8

ISSUES PRESENTED ..................................................................................... 9

STATEMENT OF FACTS ................................................................................ 10

SUMMARY OF THE ARGUMENT ................................................................ 12

ARGUMENT .................................................................................................. 15

   I.    PRETRIAL APPLICATION FOR WRIT CANNOT BE USED TO ADDRESS "AS APPLIED" UNCONSTITUTIONAL CLAIMS ............... 15

  II.   APPLICANT WAIVES ANY CLAIMS UNDER THE TEXAS CONSTITUTION AS HE FAILED TO ADEQUATELY BRIEF THESE ISSUES ..................................................................................................... 17

 III.  TEXAS PENAL CODE SECTIONS 22.07 (A)(4) AND (A)(5) ARE FACIALLY CONSTITUTIONAL ............................................................ 18

       A. *The burden is on Applicant when mounting facial constitutional challenges* ................................................................................. 18

       B. *The burden on content-based regulations is only reversed for protected speech, not true threats* ............................................... 19

       C. *Tex. Pen. Code sections 22.07 (A) 4 and (5) are not facially unconstitutional for "overbreadth" and "vagueness"* ................ 21

            1. *Overbreadth must be substantial to sustain a constitutional challenge* ................................................... 21

3

2. *A statute will not be held void for vagueness if a person of ordinary intelligence can understand its meaning*....................................................23

IV.   APPLICANT'S TRUE THREAT IS NOT PROTECTED UNDER THE FIRST AMENDMENT .......................................................................27

V.   APPLICANT MISREPRESENTS FIFTH CIRCUIT AUTHORITY TO THIS COURT ....................................................................................34

PRAYER .........................................................................................................38

CERTIFICATE OF SERVICE .................................................................39

CERTIFICATE OF COMPLIANCE.......................................................40

4

# TABLE OF AUTHORITIES

**Cases**                                                           **Page No.**

*Ahearn v. State,* 588 S.W.2d 327, 338 (Tex. Crim. App. 1979) ...........................24

*Ashcroft v. Am. Civil Liberties Union*, 542 U.S. 656 (2004)...................................20

*Briggs v. State*, 789 S.W.2d 918 (Tex. Crim. App. 1990).......................................19

*Coggin v. State,* 123 S.W.3d 82 (Tex.App.—Austin 2003, pet. ref'd)...................20

*Cotton v. State,* 686 S.W.2d 140 (Tex. Crim. App. 1985) .....................................23

*Ely v. State,* 582 S.W.2d 416 (Tex. Crim. App. [Panel Opinion] (1979) ...............19

*Ex parte Clore*, 690 S.W.2d 899 (Tex. Crim. App. 1985)......................................15

*Ex parte Dickerson,* 549 S.W.2d 202 (Tex. Crim. App. 1977) ..............................15

*Ex parte Doster*, 303 S.W.3d 720 (Tex. Crim. App. 2010)....................................15

*Ex parte Groves*, 571 S.W.2d 888 (Tex. Crim. App. 1978) ...................................15

*Ex parte Morales*, 416 S.W.3d 546 (Tex.App.—Houston [14th Dist]
2013, pet. ref'd) ...............................................................................................15, 16, 19

*Ex parte Nyabwa*, 366 S.W.3d 719 (Tex.App.—Houston [14th Dist.]
2011) .......................................................................................................................20

 *Ex parte Nyabwa*, 14-11-00250-CR, 2012 WL 378220
(Tex.App.—Houston [14th Dist.] Feb. 7, 2012)(op. withdrawn)............................20

*Ex parte Nyabwa*, 366 S.W.3d 710 (Tex. Crim. App. 2012)..................................20

*Ex parte Rathmell*, 717 S.W.2d 33, 48 (Tex. Crim. App. 1986) ............................15

*Ex parte Smith*, 178 S.W.3d 797 n.13 (Tex. Crim. App. 2005) ..............................15

*Ex parte Thompson*, 442 S.W.3d 325 (Tex. Crim. App. 2014)...............................20

*Ex parte Weise*, 55 S.W.3d 617 (Tex. Crim. App. 2001) ...................................15, 16

*Flores v. State,* 33 S.W.3d 907 (Tex.App.–Houston [14th Dist.] 2000,
pet. ref'd) ........................................................................................................24, 25

*Flores v. State*, 245 S.W.2d 432 (Tex. Crim. App. 2008) ......................................16

*Goyzueta v. State*, 266 S.W.3d 126, 130-131 (Tex.App.—Fort Worth
2008, no pet.) ..................................................................................................21, 22

*Grant v. State*, 2010 WL 311430 (Tex.App.—Waco 2010, no pet.) ......................16

*Green v. State,* 219 S.W.3d 84 (Tex.App.—Houston [1st Dist.] 2006, no pet.) .....23

*Hadnot v. State*, 884 S.W.2d 922 (Tex.App.—Beaumont 1994, no pet.) ............ 30

*In re A.C.*, 48 S.W.3d 899 (Tex.App.—Fort Worth 2001, pet. denied) .................30

*In re C.B.L.*, 08-00-00116-CV, 2001 WL 282761 (Tex.App.—El Paso
Mar. 22, 2001, no pet.)(mem. op., not designated for publication)...................31, 32

*In re Commitment of Browning,* 113 S.W.3d 851 (Tex.App.—Austin
2003, pet. denied)....................................................................................................23

*In re Shaw*, 204 S.W.3d 9 (Tex.App.—Texarkana 2006, pet. ref'd) ......................22

*Long v. State*, 931 S.W.2d 285 (Tex. Crim. App. 1996) ................................. 25-27

*Members of City Council of City of Los Angeles v. Taxpayers for
Vincent*, 466 U.S. 789 (1984)............................................................................22, 23

*Morehead v. State,* 807 S.W.2d 577 (Tex. Crim. App. 1991) ................................18

*Morgan v. State,* 557 S.W.2d 512 (Tex. Crim. App. 1977).....................................24

*Rodriguez v. State,* 93 S.W.3d 60 (Tex. Crim. App. 2002) ...............................18, 20

*Santikos v. State*, 836 S.W.2d 631 (Tex. Crim. App. 1992).............................19, 22

*State ex rel. Lykos v. Fine*, 330 S.W.3d 904
(Tex. Crim. App. 2011).................................................................................19, 22

*State v. Rosseau*, 396 S.W.3d 550 (Tex. Crim. App. 2013) ............................19, 22

*United States v. Bagdasarian*, 652 F.3d 1113 (9th Cir. 2011) .................... 11, 32-33

*United States v. Morales,* 272 F.3d 284 (5th Cir. 2001).................................... 34-37

*United States v. Playboy Entm't Group, Inc.*,
529 U.S. 803 (2000).................................................................................19, 20

*Virginia v. Black*, 538 U.S. 343 (2003) ...................................................11, 20, 27, 28

*Walker v. State*, 327 S.W.3d 790
(Tex.App.—Fort Worth 2010, no pet.)...............................................................20, 37

*Watts v. United States,* 394 U.S. 705 (1969) ................................. 21, 26, 29-31, 36

*Webb v. State,* 991 S.W.2d 408, 413
(Tex.App.—Houston [14th Dist.] 1999, pet. ref'd)..............................17, 18, 24, 26

*Woods v. State*, 153 S.W. 3d 413 (Tex. Crim. App. 2005)......................................16

**Statutes and Other Authority**                                    **Page No.**

Texas Penal Code § 21.12 (Improper Relationship)..............................................22

Texas Penal Code §§ 22.07 (A) 4 and (5) (Terroristic Threat) ........................*passim*

Texas Penal Code § 28.03(d) (Criminal Mischief)..................................................11

Texas Penal Code Ann. §36.06(a) (Obstruction or Retaliation)..................24, 31, 32

## STATEMENT OF THE CASE

Applicant was indicted by the Grand Jury for one (1) count of Terroristic Threat, charged by two alternative manner and means. (Tex. Pen. Code §22.07 (a) (4) and (a) (5)). Applicant filed a pretrial writ of habeas corpus requesting that this statute be declared facially unconstitutional and alternatively that it be found unconstitutional *as applied* to the facts of his case. The trial court declined the application for writ, and this interlocutory appeal ensued.

## ISSUES PRESENTED

1.  Can an Applicant use a pretrial writ of Habeas Corpus as a vehicle to attack the constitutionality of a statute *as applied* to him?

2.  Can an Applicant seek relief under the Texas Constitution when he fails to adequately brief the issue in his appeal?

3.  Is the Terroristic Threat statute, Texas Penal Code sections 22.07 (A)(4) and (5), facially unconstitutional because it does not define the terms "public service" and "substantial group of the public?"

# STATEMENT OF FACTS

Applicant was indicted by the Grand Jury on April 10, 2013, for Terroristic Threat, Texas Penal Code section 22.07 (a) (4) and Texas Penal Code section 22.07 (a) (5). The Applicant's indictment states in relevant part:

## PARAGRAPH I

> . . . on or about the 13th day of February, 2013, JUSTIN RIVER CARTER, hereinafter styled Defendant, did then and there, with the intent to cause impairment or interruption of public communications, public transportation, public water, gas or public supply, or other public service, threaten to commit any offense involving violence to any person or property, to wit: by threatening to "shoot up a kindergarten, watch the blood rain down and eat the beating heart out of one of them."

## PARAGRAPH II

> . . . on or about the 13th day of February, 2013, JUSTIN RIVER CARTER, hereinafter styled Defendant, did then and there, with the intent to place the public or a substantial group of the public in fear of serious bodily injury, threaten to commit any offense involving violence to any person or property, to-wit: by threatening to "shoot up a kindergarten, watch the blood rain down and eat the beating heart out of one of them."

Applicant filed a Motion to Quash the Indictment on October 29, 2013 alleging that the State "did not charge the manner and means" of Applicant's threat with enough specificity. Applicant argued that a kindergarten did not fit within the definition of a "public service" and that that the State failed to allege which "public" Applicant intended to place in fear. *See generally* Defendant's Motion to

10

Quash the Indictment. Specifically, Applicant argued that the term "public service" had a narrow and specific definition found in Texas Penal Code section 28.03(d) (Criminal Mischief). Defendant's Motion to Quash at 3. During the hearing on the Motion to Quash on December 13, 2013, Applicant's counsel referenced his impending motions to dismiss and a writ of habeas corpus, citing *United States v. Bagdasarian* and *Virginia v. Black* to the Court in oral argument. The Court denied the Defense Motion to Quash on December 20, 2013. Nine months later, Applicant filed a Motion to Dismiss for "Vagueness," a Motion to Dismiss for "Violation of the First Amendment," and an Application for Writ of Habeas Corpus, again citing *United States v. Bagdasarian* and *Virginia v. Black*. These motions were heard on August 26 and 27, 2014. On August 29, 2014, via letter to both Applicant and the State, the trial court denied the motions to dismiss and declined to grant the application for habeas corpus. On September 16, 2014, Applicant requested that the trial court make findings of fact and conclusions of law regarding these motions and the application for writ, and filed notice of interlocutory appeal. After briefing by both parties, this request was denied on October 23, 2014 and the trial court issued written orders the same day reflecting its rulings of August 29, 2014.

## SUMMARY OF THE ARGUMENT

Applicant requests that the Court dismiss the charges against him, claiming that his prosecution for a Terroristic Threat is an "affront" to the protections of free speech, citing both the United States and Texas Constitutions. More specifically, Applicant argues that Texas Penal Code sections 22.07 (A)(4) and (A)(5) are both unconstitutional on their face and unconstitutional *as applied* to him. Applicant's brief ignores well settled law that a pretrial application for writ of habeas corpus cannot be used as a vehicle to address *as applied* constitutional challenges. Applicant's has a remedy to address an *as applied* challenge with direct post-conviction appeal, and these claims should be denied. Further Applicant failed to brief any alleged Texas constitutional claims, and has waived this issue.

Statutes are presumed to be valid and the burden is on Applicant when mounting a facial constitutional challenge. To prevail, a defendant must show that the statute always operates unconstitutionally in all possible circumstances. Applicant makes no attempt to meet this burden. Applicant erroneously believes the State bears the burden in his case, but the burden is only reversed when *protected* speech is regulated. True threats, such as threats of physical harm, have never been considered protected speech.

Applicant's claims that the terms "public service" and "substantial group of the public" are overbroad are without merit. A statute that forbids intentional

12

conduct is rarely subject to a facial overbreadth challenge. The overbreadth must be substantial, a statute will not be invalidated because it is possible to imagine some unconstitutional applications. However, Applicant asks this Court to do exactly that; he does not articulate how the statute will significantly compromise the First Amendment.

Applicant also argues that the terms "public service" and "substantial group of the public" are vague and require a definition rendering these sections of the Penal Code unconstitutional. A statute will not be held void for vagueness if a person of ordinary intelligence can understand its meaning. Every term in a statute need not be defined, and Applicant's claims otherwise are without merit.

Applicant's threats to "SHOOT UP A KINDERGARTEN" and "EAT THE BEATING HEART OF ONE OF THEM" are true threats and not subject to First Amendment protections. His statements cannot simply be considered "political hyperbole," as they communicated a desire to harm others in the context of the recent wave of school shootings.

Finally, Applicant misrepresents the holding of *United v. States v. Morales* to the Court in support of his *as applied* constitutional argument. *Morales* did not impose a requirement that true threats be communicated to their targets directly. Rather the Fifth Circuit rejected this requested language in a jury charge and

upheld the defendant's conviction, under circumstances strikingly similar to Applicant's actions in the instant case.

**ARGUMENT**

**I.  PRETRIAL APPLICATION FOR WRIT CANNOT BE USED TO ADDRESS "AS APPLIED" UNCONSTITUTIONAL CLAIMS**

Habeas corpus is an extraordinary remedy that should not be used as a substitute for an appeal. *Ex parte Clore*, 690 S.W.2d 899, 900 (Tex. Crim. App. 1985); *Ex parte Groves*, 571 S.W.2d 888, 890 (Tex. Crim. App. 1978); *Ex parte Doster*, 303 S.W.3d 720, 724 (Tex. Crim. App. 2010); *Ex parte Morales*, 416 S.W.3d 546, 548 (Tex.App.—Houston [14th Dist] 2013, pet. ref'd.).   Thus, an application for pretrial writ of habeas corpus should not be entertained where there is an adequate remedy by appeal after final judgment. *Ex parte Groves*, 571 S.W.2d at 890.  Pretrial habeas corpus is not available to test the sufficiency of the complaint, information, or indictment. *Ex parte Dickerson,* 549 S.W.2d 202, 203 (Tex. Crim. App. 1977).

On interlocutory review, appellate courts must be careful not to entertain an application for writ of habeas corpus when there is an adequate remedy by direct, post-conviction appeal. *See Ex parte Weise*, 55 S.W.3d 617, 619 (Tex. Crim. App. 2001); *see also Ex parte Smith*, 178 S.W.3d 797, 801 n.13 (Tex. Crim. App. 2005) ("[A] writ of habeas corpus cannot be used as a substitute for an appeal or to serve the office of an appeal." citing *Ex parte Rathmell*, 717 S.W.2d 33, 48 (Tex. Crim. App. 1986)). Only issues cognizable on habeas grounds, such as those that protect the applicant's substantive rights or conserve the use of judicial resources may be

15

considered on interlocutory appeal. *See Weise*, 55 S.W.3d at 620; *Ex parte Morales*, 416 S.W.3d at 548.

While a defendant may raise a facial challenge to a statute via pretrial writ, a defendant must preserve an "as applied" constitutional challenge by raising it at trial. *Flores v. State*, 245 S.W.2d 432, 437 (Tex. Crim. App. 2008); *Grant v. State*, 2010 WL 311430 (Tex.App.—Waco 2010, no pet.). Pretrial motions to dismiss, rather than motions to quash, are meant to address those issues that can be determined before there is a trial on the general issue of the case. *Woods v. State*, 153 S.W. 3d 413 (Tex. Crim. App. 2005).

In this case, Applicant seeks to receive habeas relief in one of two ways: first, attack the facial constitutionality of the statute as "overbroad" and "void for vagueness," and second, attack the statute as a violation of the First Amendment *as applied* to the Applicant's personal circumstances. *See* Applicant's Brief at 4, 13, 31, 32 (arguing that the Applicant's statements could not be considered a "true threat" since they were merely "sarcasm" and "hyperbole").[1] While a Defendant may attack a statute via pretrial habeas alleging facial unconstitutionality, he may not attack a statute via pretrial writ challenging the constitutionality *as applied*.

---

[1] "Moreover, the context is clear that Mr. Carter's post was sarcastic [sic] not a 'true threat.'" Applicant's Brief at 14. "[A] hyperbolic response to the insult he ostensibly received." *Id*. at 19.

In this case Applicant has done exactly that in this application for pretrial writ of habeas corpus.  While Applicant's treatise on sarcasm and movie quotes may be fodder for jury argument, it is not appropriate or cognizable as a pretrial writ. *See* Applicant's Brief at 14-17.  To the extent Appellant attacks the statute *as applied,* he has an adequate remedy by direct, post-conviction appeal. Therefore his First Amendment *as applied* argument cannot be considered through the vehicle of a pretrial writ of habeas corpus and should be denied.

II. **APPLICANT WAIVES ANY CLAIMS UNDER THE TEXAS CONSTITUTION AS HE FAILED TO ADEQUATELY BRIEF THESE ISSUES**

In Applicant's summary of the argument, he alleges that the "prosecution of Justin Carter is an affront to the United States and Texas constitutional protections of free speech, due process and due course of law pursuant to . . . Article 1, § § 8, 10, 12 and 19 of the Texas Constitution."  Applicant's Brief at 4.  However no reference is again made to the alleged violations of the Texas Constitution until Applicant's Conclusion and Prayer for Relief.  Applicant's Brief at 31-32.

When an applicant fails to differentiate, and brief, his Texas Constitutional claims apart from his federal claims, he has waived the issue.  Tex. R. App. P. 38; *Webb v. State*, 991 S.W.2d 408, 413 n.1 (Tex.App.—Houston [14th Dist.] 1999, pet. ref'd) ("We note that Webb failed to separate his federal constitutional issues from his state constitutional issues, thus advancing four multifarious points of

error. The Texas Court of Criminal Appeals has held that this presents nothing for review.") (citing *Morehead v. State*, 807 S.W.2d 577, 579 n. 1 (Tex. Crim. App. 1991)).  As the Court of Criminal Appeals explicitly acknowledged in *Morehead v. State*:

> In his brief before this Court, appellant also cited the free speech guarantee contained in Article I, § 8 of the Texas Constitution. However, because appellant provided no argument or authority as to the protection provided by the Texas Constitution, we consider the point inadequately briefed and will not address it.

*Morehead v. State*, 807 S.W.2d 577, 579 n.1 (Tex. Crim. App. 1991) (internal citations omitted).

Applicant has made no attempt to brief or discuss any Texas constitutional claims, other than passing conclusory references in his summary, conclusion, and prayer.  As such, Applicant has not adequately briefed this issue and any relief based on Texas Constitutional claims should be denied.

## III.   TEXAS PENAL CODE SECTIONS (A)(4) AND (A)(5) ARE FACIALLY CONSTITUTIONAL

### A. *The burden is on Applicant when mounting facial constitutional challenges.*

When reviewing the constitutionality of a statute, it is presumed that the statute is valid and that the legislature did not act unreasonably or arbitrarily by enacting the statute.  *Rodriguez v. State,* 93 S.W.3d 60, 69 (Tex. Crim. App. 2002).  Courts are obliged to uphold a statute if the Court sees a reasonable construction

18

which will render it constitutional. *Ely v. State,* 582 S.W.2d 416, 419 (Tex. Crim. App. [Panel Op.] 1979).

Facial challenges to a statute are difficult to mount successfully. *Santikos v. State*, 836 S.W.2d 631, 633 (Tex. Crim. App. 1992). To prevail, the defendant must establish that the statute "always operates unconstitutionally in all possible circumstances." *State v. Rosseau*, 396 S.W.3d 550, 557 (Tex. Crim. App. 2013); *State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 908-909 (Tex. Crim. App. 2011). The reviewing court may only consider the statute as it is written, rather than how it operates in practice. *Id*. at 908. The defendant, as the individual challenging the statute, has the burden of establishing its unconstitutionality. *Briggs v. State*, 789 S.W.2d 918, 923 (Tex. Crim. App. 1990), *Ex parte Morales*, 416 S.W.3d at 549 (Tex.App.—Houston [14th Dist] 2013, pet. ref'd). When lodging a facial challenge, it is not enough to argue that a statute might operate unconstitutionally in a single circumstance, much less an extreme one. *See Santikos*, 836 S.W.2d at 633.

> B. *The burden on content-based regulations is only reversed for protected speech, not true threats.*

Applicant asserts that the burden is reversed when the statute regulates speech based on its content, primarily citing *United States v. Playboy Entm't Grp., Inc*. Brief for Applicant at 5. However, the cases Applicant cites dealt with content-based restrictions on *protected* speech. *United States v. Playboy Entm't*

*Group, Inc.,* 529 U.S. 803, 812 (2000) ("The effect of the federal statute on the protected speech is now apparent."); *see also Ex parte Nyabwa*, 366 S.W.3d 719, 725 (Tex.App.—Houston [14th Dist.] 2011), *opinion reinstated* (Mar. 28, 2012), *opinion withdrawn and superseded sub* nom; *Ex parte Nyabwa*, 14-11-00250-CR, 2012 WL 378220 (Tex.App.—Houston [14th Dist.] Feb. 7, 2012), *opinion withdrawn sub nom*; *Ex parte Nyabwa*, 366 S.W.3d 710 (Tex. Crim. App. 2012) ("Photography is a form of speech normally protected by the First Amendment."); *Ex parte Thompson*, 442 S.W.3d 325, 347 (Tex. Crim. App. 2014) ("…sexual thoughts are included within the protection of the First Amendment"); *Ashcroft v. Am. Civil Liberties Union*, 542 U.S. 656, 674 (2004) (Stevens, J., concurring) ("COPA is a content-based restraint on the dissemination of constitutionally protected speech.").

When dealing with true threats, the burden remains on the challenger. *Walker v. State*, 327 S.W.3d 790, 796 (Tex.App.—Fort Worth 2010, no pet.) (citing *Rodriguez v. State,* 93 S.W.3d 60, 69 (Tex. Crim. App. 2002)). This is because true threats are not protected speech under the First Amendment:

> The protections afforded by the First Amendment, however, are not absolute, and courts have long recognized that the government may regulate certain categories of expression consistent with the Constitution. [citing *Virginia v. Black*, 538 U.S. 343, 358 (2003)]; *Coggin v. State,* 123 S.W.3d 82, 87 (Tex.App.—Austin 2003, pet. ref'd). The First Amendment permits "restrictions upon the content of speech in a few limited areas, which are "of such slight social value as a step to truth that any benefit that may be derived from them is

> clearly outweighed by the social interest in order and morality."
> *Black,* 538 U.S. at 358–59.
>
> The First Amendment permits a State to ban a "true threat." *Id.* at 359;
> *Watts v. United States,* 394 U.S. 705, 708 (1969).

*Id.* (some internal citations omitted). As the Supreme Court explicitly noted in *Black*, "the First Amendment permits content discrimination 'based on the very reasons why the particular class of speech at issue ... is proscribable.'" 538 U.S. at 362. Because Applicant's conduct is a true threat—one that threatens physical harm—and not protected speech, he assumes the burden of demonstrating that the statute operates unconstitutionally in *every* circumstance.

### C. Tex. Pen. Code sections 22.07 (A) (4) and (5) are not facially unconstitutional for "overbreadth" and "vagueness."

While Applicant originally argued to the trial court in his Motion to Quash the indictment that the term "public service" is a narrow, specific, and defined term in the Penal Code, he now makes the sweeping and contrasting argument that the term "other public service" in section 22.07(a)(4), and the term "substantial group of the public" in section 22.07(a)(5), is unconstitutionally overbroad and vague.

#### 1. Overbreadth must be substantial to sustain a constitutional challenge.

When an appellant challenges a statute both as unconstitutionally broad and vague, the Court addresses the overbreadth challenge first. *Goyzueta v. State*, 266 S.W.3d 126, 130-131 (Tex.App.—Fort Worth 2008, no pet.). A statute that forbids

21

intentional conduct is rarely subject to a facial overbreadth challenge. *Id.* at 132. An overbreadth attack on a statute is recognized only in the context of a First Amendment challenge. *See generally Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789 (1984). Before a statute will be held unconstitutional on its face however, the overbreadth must be substantial. *See id.* at 800. The concept of "substantial overbreadth" is not readily reduced to an exact definition. A statute will not be invalidated for overbreadth merely because it is possible to imagine *some* unconstitutional applications. Instead "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *Id.* at 801; *see also In re Shaw*, 204 S.W.3d 9, 15 (Tex.App.—Texarkana 2006, pet. ref'd) (denying a pretrial writ of habeas to strike down the improper student teacher relationship statute, Tex. Pen. Code section 21.12, as overbroad) ("Thus, even if this statute could be said to infringe on fundamental First Amendment rights … there is no evidence before us indicating [it] 'reaches a substantial amount of constitutionally protected conduct.'").

Applicant in this case has made no attempt to show how Texas Penal Code sections 22.07(a)(4) and (5) "always operate[] unconstitutionally in all possible circumstances" as required by *Rosseau*, *Santikos*, and *Lykos*. Applicant fails to articulate how the statute itself will significantly compromise recognized First

Amendment protections of other parties as required by the Supreme Court in *Members of City Council of City of Los Angeles*. Applicant merely asserts that the statute "results in the criminalization of a vast amount of constitutionally protected speech" and "virtually any statement that includes language of violence toward a person or property can be prosecuted" without any justification for these sweeping claims. *See* Applicant's Brief at 12-13. The statute is tailored to address limiting the speech of *only* those who choose to trample on the rights of others by impairing the public services that their tax dollars fund, as well as right their right to be free from fear of serious bodily injury. The statute doesn't limit *all* speech directed at "public services" or the "public" and is not overbroad.

2. *A statute will not be held void for vagueness if a person of ordinary intelligence can understand its meaning.*

A statute is void for vagueness if it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden or if the statute encourages arbitrary and erratic arrests and convictions. *Green v. State,* 219 S.W.3d 84, 89 (Tex.App.—Houston [1st Dist.] 2006, no pet.) *citing, Cotton v. State,* 686 S.W.2d 140, 141 (Tex. Crim. App. 1985). "A statute is unconstitutionally vague if it either forbids or requires the doing of an act in terms that require persons of common intelligence to guess at its meaning." *In re Commitment of Browning,* 113 S.W.3d 851, 863 (Tex.App.—Austin 2003, pet. denied). A statute "need not be mathematically precise" and "need only give fair

23

warning, in light of common understanding and practices." *Flores v. State,* 33 S.W.3d 907, 920-21 (Tex.App.—Houston [14th Dist.] 2000, pet. ref'd). A statute is not unconstitutionally vague merely because its terms are not specifically defined. *Morgan v. State,* 557 S.W.2d 512, 514 (Tex. Crim. App. 1977); *Ahearn v. State,* 588 S.W.2d 327, 338 (Tex. Crim. App. 1979). When words are not defined by statute, they are ordinarily given their plain meaning and, if understood by a person of ordinary intelligence, they are not vague and indefinite. *Flores,* 33 S.W.3d at 921. Even statutes that are not the "model of clarity" and contain undefined terms are not considered unconstitutionally vague. *Webb,* 991 S.W.2d at 416-17. In upholding the constitutionality of Texas Penal Code section 36.06, Retaliation, the Fourteenth District Court Appeals noted:

> [Defendant]'s main contention on this point is the supposed grammatical impossibility in the statute. [Defendant] also argues out that neither "witness" nor "retaliate" are statutorily defined. . . We note that the statute, while not a model of clarity, does not present a grammatical impossibility such that a person of ordinary intelligence cannot understand it.

*Webb,* 991 S.W.2d at 416-17 (internal citations omitted).

Applicant asks this Court to assume that the terms "public service" and "substantial group of the public" *require* a definition, as a person of ordinary intelligence could not possibly discern what these terms mean. *See* Applicant's Brief at 9-11. While Applicant may not understand these terms, the citizens of Comal County, as cited in the Applicant's oral argument to the trial court,

24

assuredly do.[2]  Notwithstanding Applicant's repeated complaints in his Brief, oral argument, and Motion to Dismiss for Vagueness,[3] they are simple terms with common definitions that "need not be mathematically precise." *See Flores v. State,* 33 S.W.3d at 920-21.  Under Applicant's rationale, every criminal offense in the Texas Penal Code would be struck down as "vague" since every term of each section is not defined mathematically.

Applicant cites *Long v. State* in support of his vagueness claim. *Long* involved a vague portion of a harassment statute:

(a) A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, he: ...

(7)(A) *on more than one occasion engages in conduct directed specifically toward the other person, including following that person, that is reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass that person*;

(B) on at least one of those occasions by acts or words threatens to inflict bodily injury on that person or to commit an offense against that person, a member of that person's family, or that person's property; and

---

[2]

Is it a substantial group of the public? I mean, is it two-thirds majority? Is it half the people of Comal County? Is it a large number? Is it -- is it a thousand people? Is it a percentage of the larger group? Is it five people, six people? I mean, what number is a substantial group and of what public? You know, I have got numbers in my brief about that. But what is it? Is it -- is it a hundred -- do we have to -- does he have the intent to put 114,000 members of this community in fear, or half of them, or only 3,000 of them, or only ten of them?

R.R.Vol. 3, pp. 80-81.

[3] *See* footnote 2; Brief for Applicant at 8-12.

> (C) on at least one of those occasions engages in the conduct after the person toward whom the conduct is specifically directed has reported to a law enforcement agency the conduct described by this subdivision

*Long v. State*, 931 S.W.2d 285, 288 (Tex. Crim. App. 1996) (emphasis added). While the appellant in that case conceded that Section 42.07(a)(7)(B) (involving a threat) was reasonably specific, he argued (a)(7)(A) was vague and rendered the statute unconstitutional. The Court agreed the terms in (a)(7)(A) were vague, being susceptible to differing and uncertain meaning. *Id*. at 297. The Court found the term "annoy" in particular to be too vague. *See id*. at 292. Applicant quotes language from *Long*, apparently believing that case supports his position: "[f]inally, where First Amendment freedoms are implicated, the law must be sufficiently definite to avoid chilling protected expression." Brief for Applicant at 11 (emphasis in original) (citing *Long,* 931 S.W.2d at 225). However, threats to harm others are not constitutionally protected speech under the First Amendment. *See Webb,* 991 S.W.2d at 415, citing *Watts,* 394 U.S. at 707-08; *Jacobs v. State,* 903 S.W.2d 848, 851 (Tex.App.—Texarkana 1995, pet. ref'd).

Contrary to Applicant's impression, *Long* actually noted that the threat requirement had the potential for:

> clarifying the statute and *placing it beyond the reach of First Amendment concerns*. In the present statute, however, those purposes are fatally undermined by the threat requirement's relationship to the conduct requirement in (a)(7)(A). The stalking offense requires at

26

least two instances of conduct, *but only one of those instances need be a threat*.

*Long*, 931 S.W.2d at 291 (Tex. Crim. App. 1996) (emphasis added). The Court explained that, though the legislature could legitimately punish the *threat*, it could not punish *protected conduct* subsequent to the threat. *Id*. at 293-94 ("For example, the legislature could not pass a law making it a crime to (1) on one occasion physically assault a government official, and (2) on a separate occasion criticize the official's policies."). *Long* supports the State's position.[4] Threats are not protected speech, and the First Amendment is not implicated.

Tex. Pen. Code sections 22.07 (A) 4 and (5) are not overbroad and are written in plain terms that do not require detailed explanations referencing Census data as suggested by the Applicant. Applicant's claims that they are unconstitutionally overbroad and vague are without merit and should be denied.

## IV. THE APPLICANT'S TRUE THREAT IS NOT PROTECTED UNDER THE FIRST AMENDMENT.

Applicant also claims the First Amendment prohibits his prosecution. *See* Applicants Brief at 6-8, 20-24. The Supreme Court in *Virginia v. Black* noted that although the First Amendment denies a state power to prohibit the spread of social,

---

[4] In distinguishing stalking statutes that had been upheld in other jurisdictions, the Court also noted "a more specific mental state than a mere intent to annoy, such as intent to place in fear of bodily injury, or with a more intense mental state, such as intent to frighten." When dealing with the conduct at issue in *Long*, the Court observed that "these kinds of limiting elements help to avoid a vagueness problem *by taking the First Amendment out of the picture*." *Long*, 931 S.W.2d at 293 (emphasis added).

economic and political ideas, it permits restrictions on the content of speech in limited areas which are "of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." 538 U.S. 343, 359 (2003). The First Amendment therefore allows States to ban "true threats." *Id.* As the Court stated in that case:

> "True threats" encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. The speaker need not actually intend to carry out the threat. Rather, a prohibition on true threats "protect[s] individuals from the fear of violence" and "from the disruption that fear engenders," in addition to protecting people "from the possibility that the threatened violence will occur."

*Id*. at 359-60 (internal citations omitted). In *Black*, the Court noted the history of cross burning as a signal of impending violence before holding that, consistent with the First Amendment, a Virginia statute could ban cross burning with the intent to intimidate. *Id*. at 363.

Applicant's threats to "SHOOT UP A KINDERGARTEN" did not involve an expression of political, social or economic ideas; they were of "such slight social value as a step to truth" that any benefit from them is vastly outweighed by the social interest in order. *See id.* at 359. Just as *Black* considered an expression in its historical context, the Applicant's statements were made and should be

28

considered in the context of their surrounding circumstances.[5] In the wake of numerous violent school atrocities, Applicant's threats to attack a kindergarten were calculated to create fear of violence in the recipients of his message. Accordingly, Applicant's statements were "true threats" that the State may prohibit, consistent with the First Amendment. *See id*. at 363.

Applicant claims his statements were "merely hyperbole," and did not constitute a "true threat," citing *Watts v. United States* for support. *See* Applicant's Brief at 8, 21. Applicant's threat is easily distinguishable from the statement in *Watts*. In *Watts*, the statute at issue made it a felony to knowingly and willfully threaten the President. 394 U.S. at 706. During a political debate, the defendant in *Watts* made a statement that in the event he was inducted into the Armed forces – which he vowed would never happen – the first man he wanted to get in his sights would be the President. *Id*. After making the conditional statement, the defendant and the gathered crowd laughed. *Id*. at 707. The Supreme Court recognized the statute – which criminalized a form of pure speech – was constitutional. *Id*. However, against the backdrop of "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wideopen," the Court recognized that the defendant's political hyperbole was not a

---

[5] Applicant acknowledges the importance of context when citing Chaucer, although he seems blissfully unaware of the immediate historical context of his own statements. *See* Applicant's Brief at 16-17.

true threat. *Id*. at 708. The Court stressed the context in that case: the defendant intended to make a crude, conditional statement of political hyperbole at a debate, and the crowd laughed in reaction. *Id*.

By contrast, Applicant in the present case was not involved in a political debate, nor was he making a crude point on a public issue. Applicant admits the statement was "distasteful" and "tactless." *See* Applicant's Brief at 18-19. Applicant threatened to "SHOOT UP A KINDERGARTEN" and "WATCH THE BLOOD OF THE INNOCENT RAIN DOWN." Unlike *Watts*, the statement in Applicant's case was not conditional; he expressed a desire to take action. Whereas the audience in *Watts* laughed, a witness to Applicant's statements did not laugh; she contacted the police, fearing the posted threat might be carried out. Whether the threat is actually carried out or not, the reaction of the victim is some evidence of Applicant's intent. *See In re A.C.*, 48 S.W.3d 899, 904 (Tex.App.— Fort Worth 2001, pet. denied) (citing *Hadnot v. State*, 884 S.W.2d 922, 925–26 (Tex.App.—Beaumont 1994, no pet.).

The similarity of Applicant's statements to missed warning signs predating shootings such as the Columbine, Sandy Hook, and Virginia Tech disasters could not be overlooked; they certainly created a reasonable fear in the complaining witness. Moreover, after posting his threat to "SHOOT UP A KINDERGARTEN" and "WATCH THE BLOOD OF THE INNOCENT RAIN DOWN," the

immediate response to his message was "I hope you fucking bring [sic] in hell you fucking prick." The fact that Applicant followed this clearly negative reception of his statements with the further deranged threat to "EAT THE BEATING HEART OF ONE OF THEM" is still more evidence of his intent. As the Court in *Watts* realized, and the context of the statement is key. *See* 394 U.S. at 708. Political hyperbole drawing laughter at a debate is a far cry from Applicant's threat to commit an atrocity at a kindergarten, particularly in the context of a wave of school shootings.

Indeed, another Texas court has distinguished a threat such as Applicant's from the political hyperbole at issue in *Watts*. In the El Paso Court of Appeals case *In re C.B.L.*, the juvenile defendant told his friend he wanted to stuff a pipe bomb in the tailpipe of his teacher's car. *In re C.B.L.*, 08-00-00116-CV, 2001 WL 282761 (Tex.App.—El Paso Mar. 22, 2001, no pet.) (not designated for publication). After his conviction under section 36.06(a)(1)(A) of the Penal Code, the defendant challenged the statute as overbroad, arguing that his expression of his frustration with his teacher to a school friend should not be considered a threat. *Id*. at *2. The defendant cited *Watts*, arguing his statement should also be protected speech. *Id*. at *3. In distinguishing *Watts*, the Court focused on the surrounding circumstances:

> [*s*]*tatements like these however should be taken in context.* Indeed, the Court in *Watts* distinguished this kind of statement as not one uttered

> as a "true threat" but said as a "political hyperbole." [*Defendant's*] *statement can no way be taken as a "political hyperbole." We are unwilling to concede that an expression of frustration against a teacher between two juveniles, absent precedent, should be considered in the same league as a political speech.* Since Tex. Pen. Code Ann. § 36.06(a) distinguishes a threat to do harm by an unlawful act from other kinds of speech, it is not overbroad.

*Id.* (internal citation omitted) (emphasis added). Tex. Pen. Code 22.07 sections (a) 4 and (a) 5 criminalize true threats and not simply "political hyperbole" as Applicant suggests.

Applicant cites *United States v. Bagdasarian*, a Ninth Circuit Court of Appeals decision for support. The Ninth Circuit is not controlling precedent, and in any event, *Bagdasarian* is also distinguishable. In that case, the defendant posted a prediction regarding the President: "Re: Obama fk the niggar, he will have a 50 cal in the head soon." *United States v. Bagdasarian*, 652 F.3d 1113, 1115 (9th Cir. 2011). Twenty minutes later, the defendant added "shoot the nig country fkd for another 4 years+, what nig has done ANYTHING right? ? ? ? long term? ? ? ? never in history, except sambos." *Id.*

The Ninth Circuit began with the objective test, asking whether a reasonable person would have interpreted the statement as a threat. *Id.* at 1119. The test requires the fact finder to "look[] at the entire factual context of [the] statements including: *the surrounding events, the listener's reaction, and whether the words are conditional.*" *Id.* (emphasis added). The *Bagdasarian* court found the

defendant's statement was a mere prediction which did not convey an explicit or implicit threat "that he himself will kill or injure Obama." *Id*. Consequently, he also did not "express his intent to shoot Obama." *Id*. at 1123. The court also found that the defendant's statement in *Bagdasarian* was conditional. These findings led the court to hold the statement was not an actual threat, despite the dissenting justice's focus on the listeners' reaction. *See id*.; *see also id*. at 1124 (Wardlaw, J., dissenting).

The surrounding events in Applicant's case include the recent wave of violent school attacks. The statement in Applicant's case was *not* conditional. Unlike *Bagdasarian*, Applicant's statement was not a mere prediction lacking any indication of action by the Applicant. Applicant claimed *he* was going to take action; he stated "I think I'ma SHOOT UP A KINDERGARTEN AND WATCH THE BLOOD OF THE INNOCENT RAIN DOWN." After at least one observer's negative reaction, Applicant added "AND EAT THE BEATING HEART OF ONE OF THEM." Applicant *expressly* communicated his intent to "shoot up" a kindergarten. Unlike the statement of the defendant in *Bagdasarian*, every single factor of the contextual objective test supports classifying Applicant's statement in this case as an actual threat. *See id*. at 1119. Applicant's reliance on *Bagdasarian* is therefore misplaced; the test expounded by the Ninth Circuit supports the State's position. *See id*.

33

The First Amendment allows the State to ban "true threats." Applicant's statement was of no social value as a "step to the truth;" it was not political hyperbole or rhetoric, and was a true threat calculated to create fear. Applicant's topical reference to several cases does not support the proposition that his statement was not a "true threat." A closer examination of those cases demonstrates they are clearly distinguishable, particularly in light of the emphasis courts place on the context of the statement and the recent tragedies surrounding Applicant's violent threat.

## V.   APPLICANT MISREPRESENTS FIFTH CIRCUIT AUTHORITY TO THIS COURT

On appeal, Applicant describes a "test" developed in the Fifth Circuit for the application of a different criminal statute, 18 U.S.C.A. § 875, in *United States v. Morales*. Brief for Applicant at 25. Applicant indicates the Court found that "[f]irst, 'the government must prove that the defendant has communicated the threat to the target or someone he intended would communicate the threat to the target,' and second, 'that the government must prove that the defendant intended to make a threat.'" *See* Brief for Applicant at 25. Applicant further represents that:

> Under the standard articulated in the Fifth Circuit, Mr. Carter would have to specify a target. He would have to communicate his threat either to the target directly, or to a third party that could reasonably communicate the threat to the target. Mr. Carter neither specified a target to an intended party nor a third party that would foreseeably relay that threat to the target.

*Id.* at 25-26. Applicant misrepresents *United States v. Morales* to the Court. *See* 272 F.3d 284, 286, 288 (5th Cir. 2001). First, the excerpted quotation from *Morales* in context actually reads: "[t]he court rejected [Morales's] proposed instructions that 1) the government must prove that the defendant has communicated the threat to the target or someone he intended would communicate the threat to the target, and 2) that the government must prove that the defendant intended to make a threat." *Id.* at 286. This was not a "standard" the Fifth Circuit created; *it was an instruction the defendant had requested and was denied by the trial court*. Furthermore, far from adopting that as its standard, the Fifth Circuit came to the exact opposite of the conclusion Applicant tries to indicate in his brief by affirming the trial court's judgment. *See id.* at 288-89; *see also* Brief for Applicant at 25.

In *Morales*, a student in Texas threatened to shoot and kill teachers and students at Milby High during his internet chatroom conversation with a stranger in Washington state. 272 F.3d at 285. Similarly to Applicant, he filed a pretrial motion to dismiss on First Amendment grounds, "arguing that his statements to a distant third party did not constitute a true threat under Supreme Court jurisprudence." After his motion was denied and he was convicted, Morales appealed on three grounds. *Id.* at 286.

In his first ground, Morales claimed his communication was not a "true threat," given the context in which he delivered the statement. *Id*. Among other contextual factors, the Court noted Morales's awareness of other school shootings and his failure to indicate he was joking. *Id*. at 288. The Court further observed that "the context of Morales's statement is different from that in *Watts*. Unlike *Watts*, Morales was not engaged in political speech as part of a public debate, in which the listeners laughed in response to Watts's comments." *Id*. at 288.

In his second ground, Morales claimed that "his statements cannot, as a matter of law, constitute a true threat because they were made to a random third party who had no connection to Milby High School." *Morales*, 272 F.3d at 288. The Court rejected his contention, noting precedent had drawn no distinction between threats communicated to the ultimate targets and those which were not. *Id*. ("Again, the focus was on whether the threat 'in its context would have a reasonable tendency to create apprehension that its originator will act according to its tenor.'") The Court likewise rejected Morales's third ground based on his requested instructions, holding that it would not presume the general intent statutory crime required that particular specific intent. *Id*. at 289.

In Applicant's case, Applicant was certainly aware of several recent highly-publicized school massacres, including Sandy Hook. *See* Brief for Applicant at 19. He did not indicate he was joking, and continued to post his disturbing threats even

36

after at least one member of his audience reacted strongly to threat. Brief for Applicant at 3, *see also id*. at 26 ("Mr. Carter had the purposeful intent to be inflammatory…").

Applicant tries to distinguish his circumstances from *Walker v. State*, observing the absence of "body language" in his case. Brief for Applicant at 15. ("Posts on an internet forum lack any sort of physical gesture to indicate a statement's meaning."). Notably, Applicant typed his threatening language entirely in capital letters for further emphasis. Applicant also apparently overlooks the fact that *Morales* likewise involved an internet chatroom conversation absent the 'body language" Applicant claims is key to communicating a threat.

Applicant has misrepresented *United States v. Morales* by attempting to leave the Court with the impression that its holding was the exact opposite of what *Morales* actually found. Furthermore, though Applicant cited and was clearly familiar with *Morales*, he has failed to even attempt to distinguish the facts of his case from the similar facts and issues in that case, where relief was denied.

Applicant's request to declare Texas Penal Code section 22.07 (a)(4) and Texas Penal Code section 22.07 (a)(5) unconstitutional *as applied* to him is without merit and should be denied.

**PRAYER**

For the foregoing reasons, the State respectfully requests that Applicant's two points of error be overruled and his writ be denied in all respects.

Respectfully submitted,

/s/ Chari L. Kelly
Chari L. Kelly
Texas Bar. No. 24057939
Assistant Criminal District Attorney
Comal County
150 N. Seguin, Suite 307
New Braunfels, TX 78130
kellyc@co.comal.tx.us
(830) 221-1300
(830) 608-2008 (facsimile)

## CERTIFICATE OF SERVICE

I, Chari L Kelly, do hereby certify that a true and correct copy of this Brief

for the State has been delivered to Applicant JUSTIN RIVER CARTER'S attorney

of record in this matter:

Chad P. Van Brunt,
310 S. St. Mary's Street
Suite 1840
San Antonio, Texas 78205
vanbruntlaw@live.com

By electronically sending it through efile.txcourts.gov e-filing, this **16th of March 2015**.

/s/ Chari L. Kelly
Chari L. Kelly

## CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to Rule 9.4(i)(2)(B) and Rule 9.4(i)(3) of the Texas Rules of Appellate procedure that the instant brief is computer-generated using Microsoft Word and said computer program has identified that there are **6,999** words within the portions of this brief required to be counted by Rule 9.4(i)(1) & (2) of the Texas Rules of Appellate Procedure.

The document was prepared in proportionally-spaced typeface using Times New Roman 14 for text and Times New Roman 12 for footnotes.

/s/ Chari L. Kelly
Chari L. Kelly